# DISTRICT OF COLUMBIA COURT OF APPEALS ET AL. *v.* FELDMAN ET AL.

No. 81–1335.   Argued December 8, 1982—Decided March 23, 1983

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 488.

*Daniel A. Rezneck* argued the cause for petitioners. With him on the briefs was *Charles H. Cochran.*

*Robert M. Sussman* argued the cause for respondent Feldman. With him on the brief was *William P. Skinner. Michael F. Healy* argued the cause and filed a brief for respondent Hickey.*

JUSTICE BRENNAN delivered the opinion of the Court.

We must decide in this case what authority the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit have to review decisions of the District of Columbia Court of Appeals in bar admission matters. The United States Court of Appeals for the District of Columbia Circuit, reversing the United States District Court, held that the District Court had jurisdiction to review the District of Columbia Court of Appeals' denials of the respondents' requests for waivers of a bar admission rule that requires applicants to have graduated from an approved law school. We vacate the decision of the United States Court of Appeals for the District of Columbia Circuit and remand the case for proceedings consistent with this opinion.

I

We have discussed in detail in earlier opinions the changes in the structure of the District of Columbia court system effected by the District of Columbia Court Reform and Criminal Procedure Act of 1970. Pub. L. 91–358, 84 Stat. 473. See *Key* v. *Doyle*, 434 U. S. 59 (1977); *Palmore* v. *United States*, 411 U. S. 389 (1973). For purposes of this case,

*Allen R. Snyder* and *Elliot M. Mincberg* filed a brief for the Conference of Chief Justices as *amicus curiae* urging reversal.

three provisions of that legislation are crucial. One provision made "[f]inal judgments and decrees of the District of Columbia Court of Appeals . . . reviewable by the Supreme Court of the United States in accordance with section 1257 of title 28, United States Code." § 111, 84 Stat. 475 (codified at D. C. Code § 11–102 (1981)). Another provision amended 28 U. S. C. § 1257 to specify that the term "highest court of a State" as used in § 1257 includes the District of Columbia Court of Appeals. § 172(a)(1), 84 Stat. 590. These provisions make the judgments of the District of Columbia Court of Appeals, like the judgments of state courts, directly reviewable in this Court. Cases no longer have to proceed from the local courts to the United States Court of Appeals and then to this Court under 28 U. S. C. § 1254. See *Key* v. *Doyle, supra,* at 64. The third provision authorized the District of Columbia Court of Appeals to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." § 111, 84 Stat. 521 (codified at D. C. Code § 11–2501(a) (1981)). This provision divested the United States District Court of its former authority to supervise admission to the District of Columbia Bar.

Pursuant to its new rulemaking authority, the District of Columbia Court of Appeals adopted, as part of its general rules, Rule 46I (1973), which governs admission to the bar. Rule 46I(b)(3) states:

> "(3) Proof of Legal Education. An applicant who has graduated from a law school that at the time of graduation was approved by the American Bar Association or who shall be eligible to be graduated from an approved law school within 60 days of the date of the examination will be permitted to take the bar examination. Under no circumstances shall an applicant be admitted to the bar without having first submitted to the Secretary to

the Committee [on Admissions] a certificate verifying that he has graduated from an approved law school."[1]

Neither of the respondents graduated from an approved law school. Their efforts to avoid the operation of Rule 46I(b)(3) form the foundation of this case.

## A

Respondent Feldman did not attend law school. Instead, he pursued an alternative path to a legal career provided by the State of Virginia involving a highly structured program of study in the office of a practicing attorney. See Va. Code § 54–62 (1982). In addition to his work and study at a law firm in Charlottesville, Va., Feldman formally audited classes at the University of Virginia School of Law. For the final six months of his alternative course of study, Feldman served as a law clerk to a United States District Judge.

Having passed the Virginia bar examination, Feldman was admitted to that State's Bar in April 1976. In March of that year he had begun working as a staff attorney for the Baltimore, Md., Legal Aid Bureau. He continued in that job until January 1977. Like the District of Columbia, Maryland has a rule limiting access to the bar examination to graduates of ABA-approved law schools, but the Maryland Board of Law Examiners waived the rule for Feldman. Feldman passed the Maryland examination and later was admitted to that State's Bar.

In November 1976, Feldman applied to the Committee on Admissions of the District of Columbia Bar for admission to the District Bar under a rule which, prior to its recent amendment, allowed a member of a bar in another jurisdiction to seek membership in the District Bar without examina-

---

[1] Under Rule 46I(b)(4), a graduate of an unaccredited law school "may be permitted admission to an examination only after receiving credit for 24 semester hours of study in a law school that at the time of study was approved by the American Bar Association and with Committee approval."

tion. In January 1977, the Committee denied Feldman's application on the ground that he had not graduated from an approved law school. Initially, the Committee stated that waivers of Rule 46I(b)(3), or exceptions to it, were not authorized. Following further contact with the Committee, however, Feldman was granted an informal hearing. After the hearing, the Committee reaffirmed its denial of Feldman's application and stated that only the District of Columbia Court of Appeals could waive the requirement of graduation from an approved law school.

In June 1977, Feldman submitted to the District of Columbia Court of Appeals a petition for admission to the bar without examination. App. 1a. Alternatively, Feldman requested that he be allowed to sit for the bar examination. *Id.*, at 5a. In his petition, Feldman described his legal training, work experience, and other qualifications. He suggested that his professional training and education were "equal to that received by those who have attended an A. B. A. approved law school." *Id.*, at 4a. In view of his training, experience, and success in passing the bar examinations in other jurisdictions, Feldman stated that "the objectives of the District of Columbia's procedures and requirements for admission to the Bar will not be frustrated by granting this petition." *Ibid.*

The District of Columbia Court of Appeals did not act on Feldman's petition for several months. In March 1978, Feldman's counsel wrote to the Chief Judge of the District of Columbia Court of Appeals to urge favorable action on Feldman's petition. The letter stated that Feldman had "abundantly demonstrated his fitness to practice law" and suggested that "it would be a gross injustice to exclude him from the Bar without even considering his individual qualifications." *Id.*, at 6a. The letter went on to state that "[i]n the unique circumstances of his case, barring Mr. Feldman from the practice of law merely because he has not graduated from an accredited law school would raise important questions

under the United States Constitution and the federal antitrust laws—questions that Mr. Feldman is prepared to pursue in the United States District Court if necessary." *Id.*, at 6a–7a. In support of Feldman's position, the letter again stressed the strength of his training and the breadth of his experience. While acknowledging that a strict reading of Rule 46I(b)(3) prevented Feldman from taking the bar examination, Feldman's counsel suggested that the court was not precluded from considering "Mr. Feldman's application on its merits." *Id.*, at 9a. The court has plenary power to regulate the licensing of attorneys, which, in the view of Feldman's counsel, includes the discretion to waive the requirements of Rule 46I in a deserving case. In view of Feldman's "unusually high qualifications for admission" his case provided "an ideal occasion for the exercise of such discretion." *Ibid.*

Feldman's counsel also pointed out that the court had granted waivers of the rule in the past and suggested that a "failure to consider Mr. Feldman's application would be highly arbitrary and would raise serious questions about the fairness and even-handedness of the Court's policies regarding bar admissions." *Id.*, at 10a. He went on to state that "serious questions under the United States Constitution are raised by any bar admissions procedure which automatically rejects applicants who have not graduated from an A. B. A. accredited law school, without any opportunity to show that their experience and education provide equivalent evidence of their fitness to practice law." *Id.*, at 10a–11a. Feldman's counsel cited case authority in support of his position. Finally, Feldman's counsel stated that "[t]he federal antitrust laws provide an alternative basis for questioning the legality of a bar admissions procedure which presumes applicants to be unqualified if they lack a law degree and denies them any opportunity to show that their individual training and experience still qualify them to practice law." *Id.*, at 12a. Feldman's counsel also cited cases in support of this position.

In late March 1978, the Chief Judge of the District of Columbia Court of Appeals responded to the letter from Feldman's counsel. *Id.*, at 16a. The Chief Judge stated that while the Committee on Admissions had recognized Mr. Feldman's "exceptional opportunity for training" and his fine personal qualities, the purpose of the rule at issue was "to prevent the Committee and the Court from assuming the practicably impossible task of making separate subjective evaluations of each applicant's training and education; hence, an objective and reasonable standard as prescribed by the rule must be utilized." *Ibid.* In this light, the court decided not to waive the rule and upheld the Committee's denial of Feldman's application.

On March 30, 1978, the District of Columbia Court of Appeals issued a *per curiam* order denying Feldman's petition. *Id.*, at 18a. The order stated simply that "[o]n consideration of the petition of Marc Feldman to waive the provisions of Rule 46 of the General Rules of this Court, it is ORDERED that applicant's petition is denied." *Ibid.*

In May 1978, Feldman filed a complaint in the United States District Court for the District of Columbia challenging the District of Columbia Court of Appeals' refusal to waive Rule 46I(b)(3) on his behalf. *Id.*, at 35a.[2] The complaint stated that the "[d]efendants' refusal to consider plaintiff's individual qualifications to practice law is unlawful in view of his demonstrated fitness and competence, as well as the prior admission to the D. C. bar of several other individuals who did not attend an accredited law school." *Id.*, at 36a. Feldman sought "a declaration that defendants' actions have violated the Fifth Amendment to the Constitution and the Sherman Act, and . . . an injunction requiring defendants either

---

[2] The complaint named as defendants the District of Columbia Court of Appeals, the Chief Judge of the District of Columbia Court of Appeals in his official capacity, the Committee on Admissions, and the Chairman and Secretary of that Committee. App. 37a–38a.

to grant plaintiff immediate admission to the District of Columbia bar or to permit him to sit for the bar examination as soon as possible." *Ibid.*[3]

---

[3] In his complaint, Feldman specifically alleged that the District of Columbia Court of Appeals' refusal to admit him to the bar violated the Fifth Amendment in five respects. First, Feldman alleged that Rule 46I(b)(3), by limiting bar membership to graduates of accredited law schools, creates an irrebuttable presumption that only graduates of such schools are fit to practice law in the District of Columbia and thereby deprives persons who have pursued alternative methods of legal training of their liberty and property without due process of law. App. 42a. Second, Feldman alleged that the rule impermissibly and irrationally discriminates against persons who have obtained equivalent legal training by other means and therefore denies such persons the equal protection of the laws. *Ibid.* Third, Feldman alleged that by conclusively presuming that only graduates of accredited law schools are fit to practice law in the District of Columbia, the rule impermissibly delegates to the American Bar Association the District of Columbia Court of Appeals' power to regulate the practice of law and therefore deprives persons with alternative legal training of their property and liberty without due process of law. *Ibid.* Fourth, Feldman alleged that by refusing to consider whether his individual qualifications and training were equivalent to graduation from an accredited law school and for that reason justified a waiver of the rule, the District of Columbia Court of Appeals acted arbitrarily and capriciously and deprived him of his liberty and property without due process of law. *Ibid.* Finally, Feldman alleged that because the District of Columbia Court of Appeals had repeatedly waived the rule in the past to permit admission to the bar of persons who had not graduated from approved law schools, the court acted unreasonably and discriminatorily in refusing to consider his individual qualifications and both denied him the equal protection of the laws and deprived him of his liberty and property without due process of law. *Id.*, at 43a.

The complaint also included an allegation that by limiting membership in the District of Columbia Bar to graduates of approved law schools, the defendants had entered into a combination in restraint of trade and had attempted to monopolize, and in fact had monopolized, the practice of law in the District of Columbia. *Ibid.*

In his prayer for relief, Feldman asked for a declaration that Rule 46I, "either on its face or as applied to plaintiff," *ibid.*, violates the Fifth Amendment; that the defendants' refusal to consider his individual qualifications and training violated his rights under the Fifth Amendment; and that the defendants' rejection of his application because he did not graduate

The District Court granted the defendants' motion to dismiss on the ground that it lacked subject-matter jurisdiction over the action. *Id.*, at 78a, 79a.[4] The court found that the District of Columbia Court of Appeals' order denying Feldman's petition was a judicial act "which fully encompassed the constitutional and statutory issues raised." *Id.*, at 82a. The court stated that if it were "to assume jurisdiction over the subject matter of this lawsuit, it would find itself in the unsupportable position of reviewing an order of a jurisdiction's highest court." *Ibid.*

### B

Respondent Hickey began the study of law in March 1975 at the Potomac School of Law, Washington, D. C., after concluding a distinguished 20-year career as a pilot in the United States Navy. At the time he entered Potomac, Hickey was aware that it had not been accredited by the ABA, but he thought that he could transfer at some later date to an ABA-approved school. Shortly after Hickey started his studies, the District of Columbia Court of Appeals granted waivers of Rule 46I(b)(3) to graduates of the International School of Law, a new and unapproved school in the area. The court granted waivers to members of the 1975, 1976, and 1977 graduating classes of International. This practice encouraged Hickey to believe that he also would be able to obtain a waiver of the rule. In November 1977, however, the Court of Appeals denied Potomac's petition for a temporary waiver of the rule and announced that it would no longer grant waivers to future International graduates.

---

from an approved law school violated the federal antitrust laws. *Id.*, at 43a–44a. Feldman requested an order requiring the defendants to admit him to the bar without examination or to allow him to sit for the bar examination at the earliest possible date or to determine whether his training and qualifications had provided him with the same competence to practice law as graduates of approved law schools. *Id.*, at 44a.

[4] The defendants also asserted res judicata as a ground for their motion to dismiss. *Id.*, at 80a.

In April 1978, Hickey submitted to the District of Columbia Court of Appeals a petition for waiver of Rule 46I(b)(3) so that he could sit for the bar examination. *Id.*, at 19a. In his petition, Hickey described his career in the Navy and his law school record. He also submitted affidavits from four law professors attesting to his competence in his legal studies. Hickey went on to suggest that it would be unfair to deny him, or other students currently enrolled at Potomac, a waiver after they had pursued three years of legal education in reliance on the court's previous policy of granting waivers to International graduates.[5] Hickey pointed out that denying his petition for waiver would impose an especially severe burden on him in view of his age and his status as a husband and father.

Hickey also suggested that it would be burdensome for him to attempt to comply with Rule 46I(b)(4), which permits graduates of unapproved law schools to sit for the bar examination after completing 24 credit hours at an approved law school.[6] Furthermore, Hickey contended that he would be unable to comply with the rule because the ABA had instructed approved law schools in the District of Columbia to deny admission to nondegree candidates for completion of the 24-credit-hour requirement.

Finally, Hickey stated that his 20 years of military service had demonstrated "far beyond that of the average bar exam

---

[5] Hickey also suggested that the court's former policy of granting waivers to the members of the first three graduating classes of a new law school should be continued in view of the difficulty of meeting "the strict standards for ABA approval in the mere three years between the inception of a new law school and its first graduation." *Id.*, at 23a.

[6] Hickey also asserted that it was unnecessary for him to take 24 more credit hours at an approved law school in view of the breadth of the legal education he already had received. He stated that he had completed 87 credit hours covering all of the subjects included in the bar examination. To take 24 more credit hours he would have to enroll in elective courses not even tested by the bar examination. *Id.*, at 23a–24a.

candidate, that he possesses the qualities essential to a good lawyer, including: judgment, maturity, courage in the face of adversity, concern for his fellow man, commitment to our society and attention to detail." App. 24a. He suggested that "[f]ar more than most, [he had] earned the right to sit for the bar examination." *Ibid.*

On June 12, 1978, the court issued a *per curiam* order denying Hickey's petition for a waiver. *Id.*, at 49a. The order stated that the court had considered the petition and Hickey's contention that the ABA had instructed approved law schools in the District of Columbia to deny admission to nondegree candidates for completion of the 24-credit-hour requirement. The court stated: "The American Bar Association Standards and Rules of Procedure, as amended—1977, permit enrollment of persons in petitioner's category under Standard 506(ii) if they can satisfy the requirement for admission set forth in Standard 502." *Ibid.*[7]

In July 1978, Hickey filed a complaint in the United States District Court for the District of Columbia challenging the District of Columbia Court of Appeals' denial of his waiver petition. *Id.*, at 60a.[8] Hickey alleged that the denial of his petition violated the Fifth Amendment and the federal antitrust laws. *Id.*, at 64a–65a. The allegations and prayer for relief in Hickey's complaint were virtually identical to the

---

[7] At the direction of the court, the Clerk of the District of Columbia Court of Appeals had written to the ABA to determine whether it had " 'instructed, as a matter of policy, the approved law schools in the District of Columbia to deny admission to non-degree candidates, as Potomac graduates will be, for completion of the 24 credit hour requirement.'" *Id.*, at 138a. The ABA responded by citing Standard 506, which permits, among other things, "the enrollment in a limited number of courses of non-degree candidates who are students enrolled in other colleges, members of the bar, graduates of other approved law schools, or other persons who have successfully completed at least three years toward a bachelor's degree at a regionally accredited college or university." *Id.*, at 140a.

[8] The complaint named as defendants the District of Columbia Court of Appeals and its individual judges in their official capacities. *Id.*, at 61a.

allegations and prayer for relief in Feldman's complaint, see n. 3, *supra*, except that Hickey simply sought an order requiring the defendants to allow him to sit for the bar examination at the earliest possible date. App. 66a.

The District Court granted the defendants' motion to dismiss Hickey's complaint for lack of subject-matter jurisdiction. *Id.*, at 142a. In this regard, the court stated that "[i]t is well settled that the admission and exclusion of attorneys by the members of the highest court of a state is the exercise of a judicial function which may be reviewed only by the United States Supreme Court." *Id.*, at 143a. In the District Court's view, Hickey was seeking review of the defendants' denial of his petition for admission to the bar examination. The court suggested that "[t]he constitutional challenge to that denial is wholly and directly intertwined with plaintiff's efforts to secure an exemption from Rule 46, and the allegations of the complaint and the relief requested concern essentially the application of the Rule to his own particular case." *Ibid.* In this light the court concluded that "there is no basis for the extraordinary attempt to invoke the jurisdiction of this Court on a matter entrusted by the Congress to the D. C. Court of Appeals." *Ibid.*[9]

---

[9] The District Court pointed out that if the issues concerning the validity of the rule had been raised in the District of Columbia Court of Appeals that "court could and would have entertained and determined them." *Id.*, at 143a. The court stated that if that course had been followed "this Court would have been precluded in any event from thereafter entertaining those same issues." *Id.*, at 144a. The court also noted that it had been advised by counsel for the defendants that the District of Columbia Court of Appeals was still willing to consider those matters. The court suggested that it "would be a violation of the principles of comity and judicial economy in these circumstances for this Court to exercise jurisdiction even if such jurisdiction exists." *Ibid.* Finally, the court dismissed the antitrust claims on the ground that the antitrust laws "do not apply to the kind of action being challenged." *Ibid.*

C

Both Hickey and Feldman appealed the dismissals of their complaints to the United States Court of Appeals for the District of Columbia Circuit.[10]   The District of Columbia Circuit affirmed the dismissals of Hickey's and Feldman's antitrust claims on the ground that they were insubstantial. *Feldman* v. *Gardner*, 213 U. S. App. D. C. 119, 122, 661 F. 2d 1295, 1298 (1981).[11]   The court, however, concluded that the waiver proceedings in the District of Columbia Court of Appeals "were not judicial in the federal sense, and thus did not foreclose litigation of the constitutional contentions in the District Court." *Ibid.*   The court therefore reversed the dismissals of the constitutional claims and remanded them for consideration on the merits. *Ibid.*

Although the District of Columbia Circuit acknowledged that "review of a final judgment of the highest judicial tribunal of a state is vested solely in the Supreme Court of the United States," *id.*, at 134, 661 F. 2d, at 1310 (footnote omitted), and that the United States District Court therefore is without authority to review determinations by the District of Columbia Court of Appeals in judicial proceedings, the court found that the District Court has jurisdiction over these cases because the proceedings in the District of Columbia Court of Appeals "were not judicial . . . ." *Ibid.*   The court based this conclusion on a finding that neither Feldman nor Hickey asserted in their waiver petitions "any sort of *right* to be admitted to the District of Columbia bar, or even to take the examination therefor." *Id.*, at 139, 661 F. 2d, at 1315

---

[10] Although the cases were not consolidated, the District of Columbia Circuit dealt with them in a single opinion because they raised nearly identical legal issues and were argued on the same day. *Feldman* v. *Gardner*, 213 U. S. App. D. C. 119, 122, n. 3, 661 F. 2d 1295, 1298, n. 3 (1981).

[11] We denied respondents' cross-petitions for certiorari from the disposition of the antitrust claims. *Feldman* v. *District of Columbia Court of Appeals*, 458 U. S. 1106 (1982); *Hickey* v. *District of Columbia Court of Appeals*, 458 U. S. 1106 (1982).   Those claims, therefore, are not before us.

(emphasis in original). Feldman and Hickey simply sought an exemption from the rule. In particular, Hickey did not present any legal arguments nor did "he demand admission to the examination as a matter of legal entitlement." *Ibid.* He "merely asked the court to exercise its administrative discretion to permit him to take the test." *Ibid.* This amounted to a request that the court "make a policy decision equating his personal qualities with accredited legal education, not an adjudication requiring resort to legal principles." *Ibid.* (footnote omitted).

The District of Columbia Circuit found Feldman's case more difficult, *id.*, at 140, 661 F. 2d, at 1316, but still concluded that the proceedings on his waiver petition were not judicial in nature because the "claim-of-right element" was lacking. *Ibid.* Feldman's petition did not "claim that a refusal of his waiver request would deny him any right at all." *Ibid.* Instead, the petition "invoked the administrative discretion of [the court], simply asking that it temper its rule in his favor, for personal and not legal reasons." *Ibid.* The District of Columbia Circuit rejected the argument that the letter from Feldman's counsel, which raised certain legal arguments, changed the nature of the proceedings. *Id.*, at 140–141, 661 F. 2d, at 1316–1317. The District of Columbia Circuit stated: "We are unable to discern in the letter any desire that the court consider Feldman's legal criticisms of the rule on their merits, or hand down a decision dealing with them. The letter made unmistakably clear that these criticisms would be litigated, if at all, in the District Court . . . ." *Ibid.* (footnotes omitted).[12]

---

[12] The District of Columbia Circuit rejected the petitioners' alternative argument that consideration of the legal issues Feldman sought to raise in the District Court was barred by principles of res judicata. *Feldman* v. *Gardner, supra,* at 144, 661 F. 2d, at 1320. The court did so on the ground that the proceedings in the District of Columbia Court of Appeals were nonjudicial in nature. *Ibid.*

In an opinion concurring in part and dissenting in part, *id.*, at 145, 661 F. 2d, at 1321, Judge Robb expressed the view that the District Court had no

## II

The District of Columbia Circuit properly acknowledged that the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings. Review of such determinations can be obtained only in this Court. See 28 U. S. C. § 1257. See also *Atlantic Coast Line R. Co.* v. *Locomotive Engineers*, 398 U. S. 281, 296 (1970); *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, 415, 416 (1923). A crucial question in this case, therefore, is whether the proceedings before the District of Columbia Court of Appeals were judicial in nature.[13]

## A

This Court has considered the distinction between judicial and administrative or ministerial proceedings on several occasions. In *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210 (1908), railroads challenged in federal court the constitutionality of rail passenger rates set by the State Corporation Commission. The question presented by the case was whether the federal court was free to enjoin implementation of the rate order. *Id.*, at 223. In considering this question, we assumed that the State Corporation Commission was, at

---

jurisdiction to review the orders of the District of Columbia Court of Appeals. *Ibid.* He noted that the District of Columbia Court of Appeals has the status of a state supreme court and stated:

"The adverse decisions in the appellants' cases were reviewable in the Supreme Court of the United States. Although the appellants cast their petitions to the Court of Appeals in terms of requests for waivers, the petitions in essence were demands that the court declare the petitioners qualified to sit for the bar examination. Those demands were denied by *en banc* orders of the Court of Appeals. The denials were judicial acts and as such were reviewable on writ of certiorari to the Supreme Court. They were not reviewable in the District Court." *Ibid.*

[13] As the District of Columbia Circuit recognized, it is a question of federal law whether "a particular proceeding before another tribunal was truly judicial" for purposes of ascertaining the jurisdiction of a federal court. *Feldman* v. *Gardner, supra*, at 134, 661 F. 2d, at 1310. See *In re Summers*, 325 U. S. 561, 566 (1945).

least for some purposes, a court. *Id.*, at 224. We held, however, that the federal court could enjoin implementation of the rate order because the Commission had acted in a legislative as opposed to a judicial capacity in setting the rates. *Id.*, at 226. In reaching this conclusion, we stated:

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind . . . ." *Ibid.*

We went on to suggest that the nature of a proceeding "depends not upon the character of the body but upon the character of the proceedings." *Ibid.* See generally *Roudebush* v. *Hartke*, 405 U. S. 15, 20–22 (1972); *Lathrop* v. *Donohue*, 367 U. S. 820, 827 (1961); *Nashville, C. & St. L. R. Co.* v. *Wallace*, 288 U. S. 249, 259 (1933); *Public Service Co.* v. *Corboy*, 250 U. S. 153, 161–162 (1919).

In *In re Summers*, 325 U. S. 561 (1945), we considered the petitioner's challenge to the constitutionality of a State Supreme Court's refusal to admit him to the practice of law. At the outset, we noted that the record was not in the "customary form" because the state court had not treated the proceeding as "judicial." *Id.*, at 563. In fact, the state court contested our certiorari jurisdiction on the ground that the state-court proceedings had not been judicial in nature and that no case or controversy therefore existed in this Court under Art. III of the Federal Constitution. *Id.*, at 564–565. In considering this contention, we conceded that the state-court proceedings might not have been judicial under state law and that the denial of the petitioner's application for admission to the bar was treated "as a ministerial act which is performed by virtue of the judicial power, such as the ap-

pointment of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding." *Id.*, at 566. We stated, however, that in determining the nature of the proceedings "we must for ourselves appraise the circumstances of the refusal." *Ibid.*

In conducting this appraisal, we first stated:

> "A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treaties or laws of the United States has assumed 'such a form that the judicial power is capable of acting on it.' . . . A declaration on rights as they stand must be sought, not on rights which may arise in the future, and there must be an actual controversy over an issue, not a desire for an abstract declaration of the law. The form of the proceeding is not significant. It is the nature and effect which is controlling." *Id.*, at 566–567, quoting *Osborn* v. *Bank of United States*, 9 Wheat. 738, 819 (1824) (citations omitted).

Applying this standard, we noted that the state court had concluded that the report of the Committee on Character and Fitness, which refused to issue a favorable certificate, should be sustained. The state court, therefore, considered the petitioner's petition "on its merits." 325 U. S., at 567. Although "no entry was placed by the Clerk in the file, on a docket, or in a judgment roll," *ibid.*, we found that the state court had taken "cognizance of the petition and passed an order which [was] validated by the signature of the presiding officer." *Ibid.* (footnote omitted). We stated:

> "Where relief is thus sought in a state court against the action of a committee, appointed to advise the court, and the court takes cognizance of the complaint without requiring the appearance of the committee or its members, we think the consideration of the petition by the Su-

preme Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy. "A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, in this Court." *Id.*, at 567–569 (footnote omitted).

## B

These precedents clearly establish that the proceedings in the District of Columbia Court of Appeals surrounding Feldman's and Hickey's petitions for waiver were judicial in nature. The proceedings were not legislative, ministerial, or administrative. The District of Columbia Court of Appeals did not "loo[k] to the future and chang[e] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S., at 226. Nor did it engage in rulemaking or specify "the requirements of eligibility or the course of study for applicants for admission to the bar . . . ." *In re Summers, supra,* at 566. Nor did the District of Columbia Court of Appeals simply engage in ministerial action. Instead, the proceedings before the District of Columbia Court of Appeals involved a "judicial inquiry" in which the court was called upon to investigate, declare, and enforce "liabilities as they [stood] on present or past facts and under laws supposed already to exist." *Prentis* v. *Atlantic Coast Line Co., supra,* at 226.

In his petition to the District of Columbia Court of Appeals, discussed in detail, *supra,* at 466–468, Feldman contended that he possessed "the requisite fitness and good moral character necessary to practice law in this jurisdiction." App. 1a. In support of his position, he described in detail his legal

training and experience. He asserted that his professional education and training were "equal to that received by those who have attended an A. B. A. approved law school." *Id.*, at 4a. He further argued that granting his petition would not frustrate the objectives of the District of Columbia's procedures and requirements for admission to the bar. In his later letter, see *supra*, at 466–467, Feldman pointed out that the court's former practice of granting waivers to graduates of unaccredited law schools raised questions about the fairness of denying his petition. He also made explicit legal arguments against the rule based both on the Constitution and on the federal antitrust laws.[14] All of this was done against the background of an existing rule.

In essence, Feldman argued on policy grounds that the rule should not be applied to him because he had fulfilled the spirit, if not the letter, of Rule 46I(b)(3). Alternatively, he argued in his letter that the rule was invalid. In short, he was seeking "a declaration on rights as they [stood] . . . not on rights which [might] arise in the future . . . ." *In re Summers*, 325 U. S., at 567. This required the District of Columbia Court of Appeals to determine in light of existing law and in light of Feldman's qualifications and arguments whether Feldman's petition should be granted. The court also had before it legal arguments against the validity of the rule. When it issued a *per curiam* order denying Feldman's petition, it determined as a legal matter that Feldman was

---

[14] The fact that Feldman's counsel stated in the letter that he was prepared to pursue constitutional and antitrust challenges to the rule in federal district court if Feldman's petition was denied is irrelevant to a consideration of whether these issues were before the District of Columbia Court of Appeals. This case is not like *England* v. *Louisiana Board of Medical Examiners*, 375 U. S. 411 (1964), which arose in the abstention context, and discussed a litigant's right to reserve his federal claims for consideration by a federal court even though he might be required to inform the state court of the nature of his federal claims so that a state statute could be construed in light of those claims.

not entitled to be admitted to the bar without examination or to sit for the bar examination. The court had adjudicated Feldman's "claim of a present right to admission to the bar," *id.*, at 568, and rejected it. This is the essence of a judicial proceeding.

The same conclusion obtains with respect to the proceedings on Hickey's petition for waiver. In his petition, see *supra*, at 471–472, Hickey asserted that he was substantively qualified to sit for the bar examination. In support of his position, he submitted affidavits supporting his competence and described in detail his military service and legal education. He also argued that he had relied on the court's former policy of granting waivers to graduates of unaccredited law schools in developing a reasonable expectation that he would be granted a waiver as well. Moreover, he suggested that ABA policy made it impossible for him to pursue the alternative route under the rules to being permitted to sit for the bar examination. Finally, he argued, based on equitable considerations such as his age, military service, and status as a father and husband, that he should be granted a waiver. He stated that "[f]ar more than most," he had "earned the right to sit for the bar examination." App. 24a.

As in Feldman's case, Hickey's petition called upon the District of Columbia Court of Appeals to consider policy and equitable arguments in deciding whether to waive the rule. The fact that Hickey did not cite case authority in support of his arguments or make any explicitly legal contentions does not render the proceedings nonjudicial. The court still was required to determine if Hickey's qualifications and background fulfilled the basic purposes of the rule sufficiently to justify a waiver and, if not, whether equitable considerations compelled a waiver. These are essentially judicial inquiries. They resulted in a *per curiam* order that denied Hickey's petition and explicitly rejected his contention that ABA policy prevented him from acquiring 24 credit hours from an accredited law school.

Admittedly, the proceedings in both Feldman's case and Hickey's case did not assume the form commonly associated with judicial proceedings. As we said in *In re Summers, supra,* however, "[t]he form of the proceeding is not significant. It is the nature and effect which is controlling." *Id.,* at 567.[15]

## III

## A

A determination that the proceedings on Feldman's and Hickey's petitions were judicial does not finally dispose of this case. As we have noted, *supra,* at 476, a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court. Therefore, to the extent that Hickey and Feldman sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints. Hickey and Feldman should have sought review of the District of Columbia Court of Appeals' judgments in this Court.[16] To the ex-

---

[15] Our conclusion that the proceedings before the District of Columbia Court of Appeals were judicial in nature is consistent with our grants of certiorari to review state-court decisions on bar-related matters in such cases as *Schware* v. *New Mexico Board of Bar Examiners,* 353 U. S. 232 (1957), *Konigsberg* v. *State Bar of California,* 353 U. S. 252 (1957), *Konigsberg* v. *State Bar of California,* 366 U. S. 36 (1961), *In re Anastaplo,* 366 U. S. 82 (1961), *Willner* v. *Committee on Character,* 373 U. S. 96 (1963), *Baird* v. *State Bar of Arizona,* 401 U. S. 1 (1971), and *In re Stolar,* 401 U. S. 23 (1971). Last Term we again recognized the judicial nature of state bar disciplinary proceedings in *Middlesex County Ethics Committee* v. *Garden State Bar Assn.,* 457 U. S. 423 (1982).

[16] It is possible that review of a state-court decision by this Court could be barred by a petitioner's failure to raise his constitutional claims in the state courts. In *Cardinale* v. *Louisiana,* 394 U. S. 437 (1969), we stated that "[i]t was very early established that the Court will not decide federal constitutional issues raised here for the first time on review of state court decisions." *Id.,* at 438. See also *Tacon* v. *Arizona,* 410 U. S. 351, 352 (1973); *Hill* v. *California,* 401 U. S. 797, 805 (1971); *Street* v. *New York,* 394 U. S. 576, 582 (1969). Cf. *Raley* v. *Ohio,* 360 U. S. 423, 436–437

tent that Hickey and Feldman mounted a general challenge to the constitutionality of Rule 46I(b)(3), however, the District Court did have subject-matter jurisdiction over their complaints.

The difference between seeking review in a federal district court of a state court's final judgment in a bar admission mat-

---

(1959) ("There can be no question as to the proper presentation of a federal claim when the highest state court passes on it. . . . We think this sufficient here to satisfy the statutory requirement that the federal right sought to be vindicated in this Court be one claimed below. 28 U. S. C. § 1257(3)" (footnote omitted)); *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969); *Coleman* v. *Alabama*, 377 U. S. 129, 133 (1964). The United States Court of Appeals for the Fifth Circuit has relied on this limit on our certiorari jurisdiction to hold that a federal district court has jurisdiction over constitutional claims asserted by a plaintiff who has been denied admission to a state bar in a state-court judicial proceeding if he failed to raise his constitutional claims in the state court. In *Dasher* v. *Supreme Court of Texas*, 658 F. 2d 1045 (1981), the Court of Appeals stated:

"The record gives no indication that [the plaintiff] asserted the federal constitutional claims which are the basis of her § 1983 action—that the denial of her application for admission to the bar examination deprived her of a constitutionally protected liberty and property interest in pursuing the practice of law in Texas, constituted a violation of equal protection and infringed upon her constitutionally protected right to travel—in the Texas Supreme Court. Since 28 U. S. C. § 1257(3) authorizes the Supreme Court to review only judgments in state court cases in which a federal issue was raised and adjudicated, . . . it is apparent that [the plaintiff's] case could not have been reviewed on a writ of certiorari from the United States Supreme Court following the Texas Supreme Court's denial of her motion. Since [the plaintiff's] § 1983 complaint states claims for relief grounded in federal constitutional rights, claims which were not presented to the Texas Supreme Court, her § 1983 suit does not constitute an impermissible effort to seek review of a state court judgment in a lower federal court." *Id.*, at 1051 (footnote omitted).

The Court of Appeals' reasoning in *Dasher* is flawed. As we noted in *Atlantic Coast Line R. Co.* v. *Locomotive Engineers*, 398 U. S. 281 (1970), "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Id.*, at 296. If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence

ter and challenging the validity of a state bar admission rule has been recognized in the lower courts and, at least implicitly, in the opinions of this Court.

In *Doe* v. *Pringle,* 550 F. 2d 596 (CA10 1976), the plaintiff challenged in United States District Court the constitutionality of a state-court decision denying his application for admission to the bar. In concluding that the District Court lacked

---

being called upon to review the state-court decision. This the district court may not do.

Moreover, the fact that we may not have jurisdiction to review a final state-court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States district court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court. This result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional claims. See, *e. g., Sumner* v. *Mata,* 449 U. S. 539, 549 (1981); *Allen* v. *McCurry,* 449 U. S. 90, 105 (1980); *Swain* v. *Pressley,* 430 U. S. 372, 383 (1977). We also noted in *Cardinale* that one of the policies underlying the requirement that constitutional claims be raised in state court as a predicate to our certiorari jurisdiction is the desirability of giving the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments. A state court may give the statute a saving construction in response to those arguments. 394 U. S., at 439.

Finally, it is important to note in the context of this case the strength of the state interest in regulating the state bar. As we stated in *Goldfarb* v. *Virginia State Bar,* 421 U. S. 773 (1975), "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Id.,* at 792. See also *Middlesex County Ethics Committee* v. *Garden State Bar Assn., supra,* at 434–435; *Leis* v. *Flynt,* 439 U. S. 438, 442 (1979). In *MacKay* v. *Nesbett,* 412 F. 2d 846 (CA9 1969), the court stated:

"[O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems." *Ibid.*

subject-matter jurisdiction over the action, the Court of Appeals stated: "We concur in the district court's finding that it is without subject matter jurisdiction to review a final order of the [State] Supreme Court denying *a particular application for admission* to the [state bar]. This rule applies even though, as here, the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Id.*, at 599 (emphasis in original). During the course of its opinion, the Court of Appeals stated:

"The United States District Court, in denying [the plaintiff] relief, declared that there is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. The Court held that while federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority or the administration of the rules, . . . *such is not true where review of a state court's adjudication of a particular application is sought.* The Court ruled that the latter claim may be heard, if at all, exclusively by the Supreme Court of the United States." *Id.*, at 597 (emphasis in original).[17]

The Court of Appeals for the Tenth Circuit in *Doe* v. *Pringle, supra,* properly emphasized the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission. We have recognized that state supreme courts may act in a nonjudicial capacity in promulgating rules regulating the bar. See, *e. g., Supreme Court of Virginia* v. *Consumers Union,* 446 U. S. 719, 731 (1980); *Lathrop* v.

---

[17] See also *Brown* v. *Board of Bar Examiners,* 623 F. 2d 605 (CA9 1980).

*Donohue,* 367 U. S., at 827 (plurality opinion); *In re Summers,* 325 U. S., at 566. Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding. Instead, the district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding. If this is the case, the district court is not reviewing a state-court judicial decision. In this regard, 28 U. S. C. § 1257 does not act as a bar to the district court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated. United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U. S. C. § 1257.

B

Applying this standard to the respondents' complaints, it is clear that their allegations that the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions in view of its former policy of granting waivers to graduates of unaccredited law schools, see n. 3, *supra,* required the District Court to review a final judicial decision of the highest court of a jurisdiction in a particular case. These allegations are inextricably intertwined with the District of Columbia

Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions. The District Court, therefore, does not have jurisdiction over these elements of the respondents' complaints.

The remaining allegations in the complaints, however, involve a general attack on the constitutionality of Rule 46I (b)(3). See n. 3, *supra*. The respondents' claims that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association, do not require review of a judicial decision in a particular case. The District Court, therefore, has subject-matter jurisdiction over these elements of the respondents' complaints.[18]

In deciding that the District Court has jurisdiction over those elements of the respondents' complaints that involve a general challenge to the constitutionality of Rule 46I(b)(3), we expressly do not reach the question of whether the doctrine of res judicata forecloses litigation on these elements of

---

[18] In reaching these conclusions regarding the District Court's jurisdiction over particular elements of the respondents' complaints, we necessarily refuse to accept in their entirety either the petitioners' argument that "the sum and substance of respondents' federal court actions were to obtain review of the prior adverse decisions of the D. C. Court of Appeals in their individual cases," Brief for Petitioners 23, n. 9; Reply Brief for Petitioners 4–7, or the respondents' argument that their complaints involved general challenges to the constitutionality of Rule 46I(b)(3) without seeking review of particularized decisions of the District of Columbia Court of Appeals adjudicating their right to practice law. See Brief for Respondent Hickey 11; Brief for Respondent Feldman 41. As discussed above, a close reading of the complaints discloses that the respondents mounted a general challenge to the constitutionality of the rule *and* sought review of the District of Columbia Court of Appeals' decisions in their particular cases.

the complaints.  We leave that question to the District Court on remand.[19]

## IV

The judgment of the District of Columbia Circuit is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE STEVENS, dissenting.

There are many crafts in which the State performs a licensing function.  That function is important, not only to those seeking access to a gainful occupation but to the members of the public served by the profession as well.  State-created rules governing the grant or denial of licenses must comply with constitutional standards and must be administered in accordance with due process of law.  Given these acknowledged constitutional limitations on action by the State, it should be beyond question that a federal district court has subject-matter jurisdiction over an individual's lawsuit raising federal constitutional challenges either to licensing rules themselves or to their application in his own case.[1]  Curiously, however, the Court today ignores basic jurisdictional principles when it decides a jurisdictional issue affecting the licensing of members of the legal profession.

The Court holds that respondents may make a general constitutional attack on the rules governing the admission of lawyers to practice in the District of Columbia.  I agree.  But the Court also concludes that a United States district

---

[19] The District Court did not reach the question of whether the doctrine of res judicata barred further litigation on the respondents' claims in either Feldman's case, App. 79a, or Hickey's, *id.*, at 142a.

[1] Title 28 U. S. C. § 1331 (1976 ed., Supp. V) provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

court has no subject-matter jurisdiction over a claim that those rules have been administered in an unconstitutional manner. According to the Court's opinion, respondents' contentions that bar admission rules have been unconstitutionally applied to them by the District of Columbia Court of Appeals somehow constitute impermissible attempts to secure appellate review of final judgments of that court. See *ante*, at 482, 483–484, n. 16. There are two basic flaws in the Court's analysis.

First, neither Feldman nor Hickey requested the District of Columbia Court of Appeals to pass on the validity of Rule 46I(b)(3) or to grant them admission to the bar or the bar examination as a matter of right. Rather, each of them asked the court to waive the requirements of the rule for a variety of reasons. I would not characterize the court's refusal to grant a requested waiver as an adjudication. Unlike the decision of the Supreme Court of Illinois reviewed in *In re Summers*, 325 U. S. 561 (1945), the order of the District of Columbia Court of Appeals did not determine a claim of right, nor did it even apply standard equitable principles to a prayer for relief. Rather, that court performed no more and no less than the administrative function of a licensing board. As the United States Court of Appeals wrote, Hickey asked the court "to make a policy decision equating his personal qualities with accredited legal education, not an adjudication requiring resort to legal principles," *Feldman* v. *Gardner*, 213 U. S. App. D. C. 119, 139, 661 F. 2d 1295, 1315 (1981) (footnote omitted), and Feldman "invoked the administrative discretion of that body, simply asking that it temper its rule in his favor, for personal and not legal reasons," *id.*, at 140, 661 F. 2d, at 1316. Rejection of those petitions was not "adjudicative" and was therefore not susceptible to certiorari review in this Court.

Second, even if the refusal to grant a waiver were an adjudication, the federal statute that confers jurisdiction upon

the United States District Court to entertain a constitutional challenge to the rules themselves also authorizes that court to entertain a collateral attack upon the unconstitutional application of those rules. The Court's opinion fails to distinguish between two concepts: appellate review and collateral attack. If a challenge to a state court's decision is brought in United States district court and alleges violations of the United States Constitution, then by definition it does not seek appellate review. It is plainly within the federal-question jurisdiction of the federal court. 28 U. S. C. § 1331 (1976 ed., Supp. V). There may be other reasons for denying relief to the plaintiff—such as failure to state a cause of action, claim or issue preclusion, or failure to prove a violation of constitutional rights.[2] But it does violence to jurisdictional concepts for this Court to hold, as it does, that the federal district court has no *jurisdiction* to conduct independent review of a specific claim that a licensing body's action did not comply with federal constitutional standards. The fact that the licensing function in the legal profession is controlled by the judiciary is not a sufficient reason to immunize allegedly unconstitutional conduct from review in the federal courts.

I therefore respectfully dissent.

---

[2] Constitutional challenges to specific licensing actions may, of course, fail on the merits. But in my view, if plaintiffs challenging a bar admissions decision by a state court prove facts comparable to the allegations made by the plaintiff in error and appellant in *Yick Wo* v. *Hopkins*, 118 U. S. 356 (1886), they would clearly be entitled to relief in the United States district court. If they were seeking admission to any other craft regulated by the State, they would unquestionably have such a right.