**Durand DICKERSON, Plaintiff,**

v.

**G. Ronald BATES, Jr.; Charlene Brown; Paul Leavitt; Deborah Leavitt; Crow, Clothier & Bates, a Kansas Corporation, Defendants.**

**No. 03–2337–JWL.**

United States District Court,
D. Kansas.

Oct. 22, 2003.

Durand Dickerson, Leavenworth, KS, pro se.

Michael P. Crow, Crow, Clothier & Bates, Leavenworth, KS, for G Ronald Bates, Jr., Crow, Clotherier & Bates.

Stephen O. Phillips, Kansas Atty. Gen., Topeka, KS, for charlene Brown.

Michael P. Crow, Crow, Clothier & Bates, Leavenworth, KS, for Paul Leavitt, Deborah Leavitt.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff, appearing *pro se*, filed a multi-count complaint against defendants alleging that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and committed fraud. This matter is presently before the court on defendants G. Ronald Bates, Paul Leavitt, Deborah Leavitt, and Crow, Clothier & Bates' motion to dismiss

(doc. # 12) and defendant Charlene Brown's motion to dismiss (doc. # 16). As set forth below, the motions to dismiss are granted and plaintiff's complaint is dismissed in its entirety.

*Factual Background*

This case arises out of a landlord-tenant dispute between plaintiff Durand Dickerson and defendants Paul and Deborah Leavitt. In 1996, the Leavitts retained a lawyer, defendant G. Ronald Bates of the law firm Crow, Clothier & Bates, and filed suit against Mr. Dickerson seeking to have him evicted from the commercial property owned by the Leavitts. The Leavitts ultimately prevailed against Mr. Dickerson in state court. Mr. Dickerson appealed the district court's judgment to the Kansas Court of Appeals and the Kansas Court of Appeals thereafter dismissed Mr. Dickerson's appeal.

After Mr. Dickerson failed to file an appropriate supersedeas bond and refused to vacate the leased premises, the Leavitts filed additional actions against him for recovery of damages due to his continuing default under the terms of the parties' written lease agreement. These actions were apparently successful. The Leavitts also sought and obtained post judgment relief in the form of an execution and garnishment due to Mr. Dickerson's refusal to vacate the premises and otherwise satisfy the Leavitts' judgment. Mr. Dickerson appealed each of the judgments against him to the Kansas Court of Appeals and that court dismissed each of the appeals and granted, in part, the Leavitts' request for attorney fees.

In 1999, Mr. Dickerson filed a state court action against the Leavitts alleging that they had defrauded him. The Leavitts filed a motion to dismiss that action based on the doctrine of collateral estoppel and the judge granted the motion. Mr. Dickerson appealed that decision and the Kansas Court of Appeals affirmed the dismissal of the case. In the meantime, Mr. Dickerson filed another action against the Leavitts, this time in federal district court, alleging that the Leavitts and Mr. Bates, among others, had violated his constitutional rights. Judge O'Connor of this court dismissed Mr. Dickerson's complaint and the Tenth Circuit affirmed that decision.

Now, Mr. Dickerson has filed a RICO action against the Leavitts, Mr. Bates and his law firm, and Charlene Brown, the former clerk of the Leavenworth County District Court. In his complaint, he asserts that the defendants engaged in a pattern of racketeering activity from August 1996 through October 1999–activity which appears to consist largely of defendants' efforts to collect the judgments entered in favor of the Leavitts (including garnishing Mr. Dickerson's funds); to obtain an award of attorney fees from the Kansas Court of Appeals; and to request that Mr. Dickerson post the requisite supersedeas bond. Mr. Dickerson also alleges that defendants made various false statements in the briefs they submitted to the Kansas Court of Appeals and that defendants fraudulently obtained the non-wage garnishment order that the state court issued.

*Discussion*

 Defendants move the court to dismiss plaintiff's complaint on the grounds that the *Rooker–Feldman* doctrine bars the court from exercising subject matter jurisdiction over plaintiff's claims. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). It is beyond dispute that "*Rooker–Feldman* is a jurisdictional prohibition." *See Pittsburg County Rural Water Dist. No. 7 v. City of*

*McAlester,* 2003 WL 22376980, 346 F.3d 1260 (10th Cir. Oct.17, 2003).[1]

■ Under 28 U.S.C. § 1257, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." *Pittsburg County,* 346 F.3d at 1272. The negative inference from this statutory authorization is that "federal review of state court judgments can be obtained only in the United States Supreme Court." *Id.* (quoting *Kenmen,* 314 F.3d at 473). Thus, *Rooker–Feldman* precludes "a party losing in state court ... from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Id.* (quoting *Kenmen,* 314 F.3d at 473).

■ The Supreme Court has applied the *Rooker–Feldman* jurisdictional bar to two categories of claims-claims that are actually decided by a state court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and claims that are "inextricably intertwined" with a prior state court judgment, *see Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Id.* It is readily apparent that plaintiff's claims for relief based on violations of RICO were not actu-ally decided by the Kansas courts. Thus, the court must resolve whether plaintiff's federal court claims are "inextricably intertwined" with the Kansas state court's judgment. *See id.* In applying the "inextricably intertwined" standard, the court asks "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* (quoting *Kenmen,* 314 F.3d at 476). Stated another way, the court asks whether "the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Id.* (quoting *Kenmen,* 314 F.3d at 476). If it did, *Rooker–Feldman* deprives the federal court of jurisdiction; if it did not, *Rooker–Feldman* provides no bar. *Id.*

Using these principles as a guide, the court is convinced that it does not have jurisdiction over plaintiff's claims. After a careful reading of plaintiff's complaint, affording him the liberality given to all pro se litigants, the court concludes that each of plaintiff's claims is inextricably intertwined with the state court's judgments against him and in favor of the Leavitts; thus, under *Rooker–Feldman,* those claims may not be reviewed by this court. Plainly, the true purpose in filing his federal complaint is to redress plaintiff's dissatisfaction with the outcome of the state court proceedings. In his complaint, for example, plaintiff complains about the losses he

---

1. Because the court determines that it does not have jurisdiction over plaintiff's claims, the court declines to address defendants' alternative bases for dismissal, except to note that defendant Charlene Brown, as she suggests, would be entitled to judicial immunity from plaintiff's claims and she would be entitled to dismissal of plaintiff's complaint on this basis. Each of the allegations in plaintiff's first amended complaint concerning Ms. Brown focus on activities that Ms. Brown engaged in as the district court clerk in Leavenworth County, Kansas, including mailing copies of various orders to Mr. Dickerson. As such, she is immune from suit. *See Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000) (absolute judicial immunity extends to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved and where the non-judicial officer's duties had an integral relationship with the judicial process); *see also Wiggins v. New Mexico State Supreme Court Clerk,* 664 F.2d 812, 815 (10th Cir.1981) (state court clerk absolutely immune from suit because "no court can discharge its judicial duties without the aid of clerks, servants and agents").

has suffered as a result of having his funds garnished, having to post a bond, and having to pay the Leavitts damages for lost rent. He complains about the Leavitts' efforts to obtain an award of attorney fees. In his prayer for relief, he seeks reimbursement for these amounts, including the "loss of bond money" and the loss of his garnished funds. These claims, then, are inextricable intertwined with the state court proceedings. *See Kenmen,* 314 F.3d at 476 n. 6 (federal court upsets a state court judgment, and violates *Rooker–Feldman,* when it awards damages for losses incurred as a result of complying with state court judgment); *Dopp v. Loring,* 54 Fed.Appx. 296, 297 (10th Cir.2002) (to extent plaintiff alleged illegal activity under RICO for actions taken pursuant to state court rulings, federal district court correctly concluded that its jurisdiction was barred by *Rooker–Feldman* doctrine).

■ Plaintiff also suggests in his complaint that the defendants obtained the judgment against him (including the award of attorney fees and the garnishment order) through fraud and improper means. As the Tenth Circuit has noted, however:

> [t]he proper remedy for a state court litigant's dissatisfaction with a state court judgment, however, is not a suit in federal court; instead, litigants must seek review of a state court judgment through the state court appellate process. Then, if still dissatisfied, they may seek review in the United States Supreme Court.

*Ellis v. CAC Financial Corp.,* 2001 WL 289943, at *3, 6 Fed.Appx. 765 (10th Cir. Mar.26, 2001). Thus, even where, as here, the plaintiff does not expressly seek to overturn the state court judgment, but complains instead about the procedures used to obtain that judgment, it is impossible for the federal court to resolve such claims without calling into question the state court judgment and violating *Rooker–Feldman. Id.* Clearly, this court cannot resolve plaintiff's claim that the garnishment order was obtained through fraud without essentially reviewing the order itself. Similarly, the court cannot resolve plaintiff's claim that the Leavitts obtained an award of attorney fees through improper means without calling into question that award. *See Barnett v. State of Colorado,* 2003 WL 22321478, at *2 (10th Cir. Oct.10, 2003) (federal court plaintiff's challenge to award of attorneys' fees against him in state court was inextricably intertwined with state court judgment).

In his briefs in response to the motions to dismiss, plaintiff urges that his claims fall outside the ambit of *Rooker–Feldman.* He states, for example, that he was injured not by the state court judgments but by the defendants' "criminal acts" in obtaining and enforcing those judgments and that he is not seeking relief from the judgments but from the "criminal wrongs committed by the defendants." Plaintiff's attempt to reframe the issues is unavailing. The fact remains that plaintiff, in his federal court complaint, seeks monetary damages attributable to losses he sustained as a result of having to post a bond, having to pay a portion of defendants' attorneys' fees, and having his funds garnished-all pursuant to a state court order. But for the state court judgments, then, plaintiff would have suffered no injury. Thus, he is essentially seeking an "undoing" of the state court judgments and he cannot do so here in federal court. *See Kenmen,* 314 F.3d at 477 (federal court cannot place a plaintiff back in the position he occupied prior to a state court judgment).[2]

**2.** Plaintiff also urges that *Rooker–Feldman* has no application to this case because his RICO claims were not raised in the state court proceedings and could not have been raised be-

cause much of the conduct he complains about occurred after the judgments were entered. Of course, the fact that his claims were

Despite his protests to the contrary, it is clear that plaintiff's injury resulted from the state court judgments, that his complaint in federal court seeks only to upset that judgment, and that the resolution of his federal claims necessarily requires consideration of the underlying state court decision. *See Kenmen,* 314 F.3d at 476. As Judge O'Connor of this court noted with respect to Mr. Dickerson's civil rights claims against these defendants, the court "cannot envision how plaintiff could obtain any relief based on his federal claims without a factual finding that the state court judgments entered against plaintiff were erroneous." *See Dickerson v. Leavitt Rentals,* 995 F.Supp. 1242, 1246 (D.Kan.), *aff'd,* 153 F.3d 726, 1998 WL 380923 (10th Cir.1998) (affirming district court and further noting that Mr. Dickerson's claims were "patently frivolous"). Accordingly, the court grants defendants' motions to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants G. Ronald Bates, Paul Leavitt, Deborah Leavitt, and Crow, Clothier & Bates' motion to dismiss (doc. # 12) is **granted** and defendant Charlene Brown's motion to dismiss (doc. # 16) is **granted**. Plaintiffs' first amended complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

not actually raised in the state court proceedings has no bearing on the application of