In re Joan KELLY, Debtor.

Joan Kelly, Edward Sparkman,
Plaintiffs,

v.

Ameriquest Mortgage Company, Rose
Tree Properties, Inc., and First Commercial Mortgage Co., Defendants.

Delaware County Properties,
L.P., Plaintiff,

v.

Joan Kelly, Defendant.

Bankruptcy No. 00–32443.
Adversary Nos. 00–695, 00–726.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 9, 2001.

David A. Scholl, Media, PA.

Edward Sparkman, Chapter 13 Standing
Trustee, Philadelphia, PA.

Louis P. Vitti, Pittsburgh, PA.

Sandhya M. Feltes, Philadelphia, PA.

Robert Diamond, Media, PA.

Judith T. Romano, Philadelphia, PA.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The Court addresses the pending matters raised at the hearing held December 28, 2000, including debtor's motion to amend complaint and Defendant Rose Tree Properties, Inc.'s Motion to Sever Claims Against Rose Tree Properties and First Commercial Mortgage Company from Claims Against Ameriquest and to Dismiss Claims Against Rose Tree Properties and First Commercial Mortgage for Lack of Jurisdiction or in the Alternative Abstain from Hearing Any Claims against Rose Tree Properties and First Commercial Mortgage or in the Alternative for Summary Judgment in Favor of Rose Tree Properties and First Commercial Mortgage and for Relief from the Automatic Stay. For the reasons expressed below, debtor's motion to amend shall be granted and Rose Tree Properties' motion to sever, etc. shall be denied.

This is a sad story. Mrs. Joan Kelly, a widow, allowed her first mortgage to become delinquent. Although the mortgage only had a small principal amount due ($3,000), over several years the debt for interest, escrow deficits, Sheriff's costs, attorney fees, real estate taxes and other expenses grew to approximately $35,000.

The debtor believes her property was worth $150,000. This estimated market value is disputed. The property appears to be in need of $15,000 in repair expenses. The debtor lives there with her mother who is 88–years old. She operates a bar.

The Court is uninformed about its profitability.

The debtor's pleadings are somewhat desperate at this point in time. The pleadings of the purchaser and its successor at the Sheriff's Sale are duplicative, repetitive and difficult to organize. This Court now attempts the task of sorting out the salient issues.

### History

On or about November 8, 1978, Joan Kelly and her husband, James M. Kelly (now deceased) gave a $25,000 mortgage to Century Federal Savings and Loan. Later the mortgage was assigned to Federal Home Loan ("FHL") in Reston, Virginia on May 15, 1991. This may have been a part of the savings and loan crisis of the 1990's. FHL caused a judgment to be entered for $17,434.59 on November 24, 1992. FHL assigned the mortgage to First Commercial Mortgage Company ("FCMC") for $1 on December 23, 1996. FCMC is located in Little Rock, Arkansas. See Exhibit C, Pade Affidavit November 2, 2000.

This date of assignment, December 23, 1996, seems unusual because FCMC actually commenced foreclosure on December 2, 1996. See # 96–17289 Common Pleas Delaware County. The Sheriff of Delaware County attempted service on December 19, 1996. All of the occurrences appear to have occurred before the assignment was formally made on December 23, 1996. See Exhibit 27j, Pade Affidavit November 2, 2000.

The debtor did not respond to these attempts at personal service at her residence. The Common Pleas Court permitted service by publication and posting of the residence. The Sheriff reports that was accomplished.

At a date not known to the Bankruptcy Court, the Region Mortgage Company

("Region") received an assignment of the debtor's mortgage or became a successor in interest of FCMC.

It appears that on April 15, 1997 a "new" foreclosure judgment of $10,611.01 was entered for failure to answer. It appears that the first Notice of Sheriff's Sale of Real Property was scheduled for July 18, 1997 at the courthouse in the amount of $10,611.01.

The Court believes the debtor filed a Chapter 13 bankruptcy case which stayed this sale. The bankruptcy number of the debtor's first bankruptcy case is not identified to the Court, but the first case was dismissed.

A second Notice of Sheriff's Sale of Real Property was scheduled for September 18, 1998 for $10,611.01. The debtor filed a second Chapter 13 case on September 17, 1998. This case delayed the sale. The bankruptcy case was dismissed on July 28, 1999. The debtor alleges that she allowed this to happen because she intended to apply for a loan to refinance the subject mortgage because the debt was only $10,611.01.

A third Notice of Sale appears to have again been served on the debtor and other defendants by certified mail on February 29, 2000 setting a Sheriff's Sale for June 16, 2000. The Sheriff's Sale was continued to August 18, 2000 by the plaintiff.

In the interim, on August 17, 2000, the Court of Common Pleas Delaware County upon petition by FCMC entered an order which reassessed damages at $34,498.74. It appears no answer was filed by the defendant debtor. However, this corrected assessment was one day before the continued sale on August 18, 2000 and raises a question of appropriate process.

The debtor challenges the adequacy of the notice of this sale, which was by certified mail. The debtor challenges FCMC and Region's failure to reestablish their inability to obtain personal service and their use of the "stale" 1997 affidavit concerning the debtor's whereabouts being unknown. This may raise a question of due process.

In the meantime, the debtor had some knowledge because the debtor proceeded to apply to Ameriquest for a loan to satisfy the mortgage. The debtor alleges that on July 14, 2000 she executed papers requested by Ameriquest to obtain a loan in the amount of $68,000. The debtor alleges that Region or FCMC were to be paid in full by the loan from Ameriquest and believes they were aware of her loan application.

Ameriquest admits meeting with the debtor and accepting her application, but Ameriquest alleges that they "orally" advised the debtor that they were unable to complete the loan process. The date of the oral advice is not provided. However, no notice in writing was given by Ameriquest before the August 18, 2000 sale. The debtor believes that this caused her harm.

On August 18, 2000, Legal Properties, L.P. ("LPLP") was the successful bidder at a Sheriff's Sale of the debtor's property for $54,000. There was competitive bidding. On August 19, 2000, LPLP assigned for $1 its interest in the property to a related company, Delaware County Properties, L.P. ("DCPLP"). Rose Tree Properties ("RTP") is the General Partner of DCPLP. The debtor has made no allegations that LPLP or DCPLP or RTP were bad faith purchasers at the August 18, 2000 Sheriff's Sale.

On or about October 3, 2000, the debtor filed the current Chapter 13 bankruptcy case. Negotiations have occurred between the debtor and RTP over a rental agreement and/or repurchase of the property,

but no agreement has been reached. The debtor filed Adversary No. 00–695 on October 11, 2000. The adversary seeks to (1) strike and set aside the foreclosure judgment and void the Sheriff's Sale of debtor's property, and (2) award debtor damages from Ameriquest for its alleged breach of loan contract.

DCPLP filed an Action in Ejectment on or about August 30, 2000 at docket number 00–8188 in the Court of Common Pleas Delaware County, Pennsylvania. About October 20, 2000, a notice of removal of that action was filed by the debtor in the bankruptcy court and captioned at Adversary No. 00–726. A Motion to Remand the Ejectment Action is pending at Adversary No. 00–726.

A Motion by DCPLP for Relief from the Automatic Stay was filed. An Answer was filed by the debtor raising as a partial defense the issue encompassed in Adversary Proceeding No. 00–695, which challenges the validity of the foreclosure judgment and the conduct of Ameriquest, the loan company.

On or about November 9, 2000, Judge Gindin, the presiding judge at that time, entered an order requiring the debtor to pay $940.00 per month on or before November 15, 2000 and the 15th day of each month thereafter as adequate protection and setting a trial date for Adversary Proceedings No. 00–695 and No. 00–726. The order was docketed on November 29, 2000 and has not been appealed. Judge Gindin's illness and this judge's calendar have not permitted the adversary proceedings to be scheduled promptly for trial.

### Legal Issues Raised at Adversary Nos. 00–695 and 00–726 and Motion for Relief from Stay

The parties who purchased the property at the Sheriff's Sale on August 18, 2000 raise res judicata issues and jurisdiction issues. They raise issues of severance, abstention, dismissal, summary judgment and relief from stay. The issues are all raised in one motion filed at the adversary proceeding, despite the fact that certain requests for relief pertain only to and can be granted only in the bankruptcy case and not the adversary. The issues have not been presented clearly. Even so, in the interest of judicial economy, the Court will review and address these issues.

### Rooker–Feldman and Preclusion Issues

Many of these issues coalesce around the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine stems from two Supreme Court cases decided about sixty years apart. In 1923 *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that lower federal courts lack jurisdiction to entertain appeals from state court judgments because the constitution reserves that power only to the Supreme Court. For a period of time the lower federal courts applied *Rooker* infrequently, often using it interchangeably with the doctrines of claim and issue preclusion. In 1983 the Supreme Court decided *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), which provides the doctrine its name. In *Feldman*, the Supreme Court held that lower federal courts have no jurisdiction to hear "challenges to state court decisions" or to decide issues "inextricably intertwined" with state court judgments. At about the same time, the Supreme Court decided a series of preclusion cases expanding the reach of the Full Faith and Credit Doctrine and Act and limiting federal court jurisdiction to reach issues that were decided or might have been decided by state courts.

The Full Faith and Credit Doctrine of the U.S. Constitution, Article 4, Section 1, is codified at 28 U.S.C. § 1738 "full faith

and credit." This code section implements that doctrine of res judicata and collateral estoppel now better described as "claim preclusion" and "issue preclusion." This statute obliges federal courts to give the same preclusive effect to state court judgments as would the courts of the state rendering the judgment. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ Additionally, 28 U.S.C. § 1257 provides that final judgments or decrees rendered by the highest court of the state in which a decision could be had, may be reviewed by the Supreme Court. This has been interpreted so that review of a state court judgment may be had only in the U.S. Supreme Court. U.S. district courts and U.S. bankruptcy courts do not have jurisdiction over challenges to state court decisions. This is so even if the challenge raises constitutional questions which the state courts could have heard. The jurisdiction possessed by the district courts and bankruptcy courts is strictly original trial jurisdiction not appellate jurisdiction.

There are narrow exceptions where issues invoke exclusive federal jurisdiction, such as the avoiding powers of the Bankruptcy Code. These statutes raise unique exceptions to these doctrines. For example, liens, judgment and transfers can be avoided under 11 U.S.C. §§ 522, 544, 545, 547, 548, 549 or 510, because these statutes raise independent and exclusive federal causes of action.

■ However, suits, which on their face constitute an appeal of a state court decision, should be quickly dismissed by a federal court on jurisdictional grounds. However, sophisticated plaintiff's attorneys do not caption their pleading as an "appeal," but the result they seek from a federal court is to reverse a state court judgment.

That appears to be the case here. Count I of the amended complaint and relief requested in Adversary Proceeding No. 00–695 is to strike the judgment of foreclosure obtained on December 2, 1996 by FCMC and void the Sheriff's Sale conducted on August 18, 2000. Based on the present record, the *Rooker–Feldman* doctrine, and preclusion doctrines, this court does not believe it has jurisdiction to hear the matters raised in Count I of the complaint.

■ In her brief, the debtor claims the provision of 11 U.S.C. § 544 provides the Trustee with such power to avoid the two transfers, i.e., judgment of foreclosure and/or Sheriff's Sale. It is correct that upon the appropriate facts 11 U.S.C. § 544 would provide such independent exclusive federal jurisdiction. However, the facts which are specifically alleged do not implicate 11 U.S.C. § 544. The facts alleged only call attention to alleged errors under state law. However, the Amended Complaint also sounds in preference as it calls attention to the Sheriff's Sale occurring within 60 days of the debtor's bankruptcy filing.

The Court permits the debtor to amend the complaint to allege facts which would invoke application of a bankruptcy statute such as, but not limited to, 11 U.S.C. § 544 or § 547 and accordingly establish federal jurisdiction. It is the burden of the debtor to establish that the causes of action raised in Count I of the complaint are not disguised appeals of the state court foreclosure judgment and/or the Sheriff's Sale of property. Count I will be dismissed without prejudice, if appropriate jurisdiction is not established.

An appropriate order is attached.

### *ORDER OF COURT*

AND NOW, this ____ day of February, 2001, upon the basis of the attached Mem-

orandum Opinion of this date, it is hereby ORDERED that:

### A. With Regard to Adversary Proceeding No. 00–695

1. The debtor is to further amend the complaint to allege specific facts which she intends to prove, which would invoke a provision of the bankruptcy code such as 11 U.S.C. §§ 544 and 547, so as to provide this court with federal jurisdiction. The debtor has until *February 26, 2001* to submit, file and serve such amended complaint. Defendants have until *March 12, 2001* to respond. The Court will determine whether a hearing is needed.

2. The cause of action raised in Count II against Ameriquest sounds in tort and may continue. If there has been inappropriate communication between Ameriquest and other defendants, Count II may be amended.

3. Discovery is permitted to proceed immediately as to Ameriquest and First Commercial Mortgage Company/Regions Company.

The debtor has the burden of convincing the Court that the cause of action raised in Count I is not a disguised appeal of the state court judgment of foreclosure and/or the Sheriff's Sale.

If this Court remains unconvinced of its jurisdiction, it will dismiss Count I without prejudice to raise these issues in the state court.

### B. With Regard to Adversary Proceeding No. 00–726

The Court continues the Motion for Remand of Ejectment action filed at Adversary Proceeding No. 00–726.

### C. With Regard to Bankruptcy No. 00–32433/Relief from Stay

The Court chooses not to disturb the order entered by Judge Gindin requiring the debtor to pay $940 per month to the Delaware County Properties, L.P. as adequate protection pending resolution of Count I of Adversary Proceeding 00–695. No appeal was taken from that order.

All other motions are continued.