CHILDREN A & B, by and through
Deborah Cooper, etc.,
Plaintiffs,

v.

State of FLORIDA, et al., Defendants.

No. 4:04CV258–RH/WCS.

United States District Court,
N.D. Florida,
Tallahassee Division.

Sept. 30, 2004.

George Roderick Mead, II, Moore, Hill & Westmoreland PA, Pensacola, FL, for Plaintiff.

James Aaron Peters, Attorney General–The Capitol, Daniel Jon Woodring, Florida Department of Education, Michael Pearce Dodson, General Counsel–Office of Legislative Svcs., Tallahassee, FL, for Defendants.

## ORDER FOR ENTRY OF JUDGMENT

HINKLE, Chief Judge.

The issue in this action is whether the State of Florida must give children the option of attending private schools at public expense. The plaintiffs—school age children and their parents—object to the quality and content of instruction available in the public schools, and they assert a right under various provisions of the Constitution to obtain a private school education at public expense. The short answer, of course, is that the children are entitled under state law to a free public education, and are entitled under the First Amendment to choose instead to attend a private school, but they are not entitled to attend a private school at public expense, under the First Amendment or otherwise. The issue is not close.

Defendants have moved to dismiss, asserting that the action is barred by the *Rooker–Feldman* doctrine or by the Eleventh Amendment, that two of the defendants have legislative immunity, and that in any event the entire action is unfounded on the merits. Plaintiffs have moved for summary judgment on the merits. I grant defendants' motions in part, deny plaintiffs' motion, and direct entry of judgment dismissing the action.

## I

### Rooker–Feldman

■ Prior to filing this action, these same children brought an action in state court seeking essentially the same relief. The state circuit court dismissed the action with prejudice, and the First District Court of Appeal affirmed. The first ground invoked by defendants for dismissal of the case at bar is the *Rooker–Feldman* doctrine, which recognizes that federal district courts do not sit to review decisions of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

■ *Rooker–Feldman* does not bar this action for two reasons. First, the parents are parties to the case at bar in their own right; they were parties in state court only as next friends of their children. Florida law makes clear that a minor's guardian or next friend is not himself or herself a party. *See, e.g.,* Fla. R. Civ. P. 1.210(b) (providing for representative actions for minor parties); Fla. Jur. Family Law § 465 ("The next friend is not a party to the suit; he or she is an officer of the court, appearing specially to look after the interests of the minor whom he or she represents."); *Youngblood v. Taylor*, 89 So.2d 503, 506 (Fla.1956) ("[I]f, as here, the next friend in one suit happens to be the father who brings the other suit, the parties cannot be said to be identical because in one the real party in interest is the minor; in the other the adult. Nor was the appellant [father] a privy to the first action."). All this is relevant because *Rooker–Feldman* applies only to a person who is a party to both the federal and state cases. *See, e.g., Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *Roe v. State of Alabama*, 43 F.3d 574, 579–80 (11th Cir.1995) (noting that *plaintiffs* must have been parties to state court litigation).

■ Second, and more importantly, the state court decision addressed only state law issues, mentioning federal law not at all. While federal authorities were cited by plaintiffs in passing, no federal claim was presented. Nor are the state issues presented there and the federal issues presented here inextricably intertwined; state and federal law include different provisions that address different concerns. In short, the case at bar is not in any sense a forbidden appeal of the state court's decision; this case is, instead, an original action raising issues not adjudicated in state court.[1]

## II

### Eleventh Amendment

Defendants next assert that this action is barred by the Eleventh Amendment. That is partially correct.

Plaintiffs have named as defendants various elected officials of the state, in their official capacities, as well as the State of Florida itself and four state entities: the State Board of Education, the Florida Department of Education, the Florida House of Representatives, and the Florida Senate.

■■ Claims for prospective relief arising under federal law may go forward against state officers in their official capacities under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), unless the relief sought is a payment to the plaintiffs from the state treasury. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding retrospective relief under § 1983 that would be payable from state treasury barred by Eleventh Amendment).

Claims arising under *state* law against state officers in their official capacities are barred by the Eleventh Amendment. *See Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Thus plaintiffs' claims against the defendant state officers, to the extent they arise under federal law, are not barred by the Eleventh Amendment, although an order requiring these defendants to pay plaintiffs' tuition might well be barred.

■ With respect to the state itself, however, the situation is different. The Eleventh Amendment bars an action by a private party against the state in its own name, regardless of the relief sought. *See, e.g., Seminole Tribe v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Plaintiffs' claims against the state in its own name will be dismissed based on Eleventh Amendment immunity.

■ Plaintiffs' claims also will be dismissed as against the Board of Education, Department of Education, House of Representatives, and Senate. Claims against these entities probably also are barred by the Eleventh Amendment, but that issue need not be addressed, because claims against these entities are clearly redundant to the official capacity claims against the state officers, rendering dismissal on that basis appropriate. *Cf. Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (approving dismissal of official capacity defendants whose presence was merely

---

1. Whether the children would nonetheless be barred from pursuing successive actions based on the prohibition against splitting causes of action is a different issue that has not been raised and does not matter, because the parents clearly have not split *their* causes of action, and in any event defendants are entitled to prevail in this litigation on other grounds, as set forth *infra.*

redundant to naming of institutional defendant).

## III

### Legislative Immunity

██ Among the state officers named as defendants are the President of the Senate and Speaker of the House. They are not proper defendants; they have no role in enforcing the laws at issue or administering the public school system. To the extent plaintiffs seek to call these defendants to account for their role in adopting the legislation at issue, they have legislative immunity. Plaintiffs' claims against these defendants therefore will be dismissed.

## IV

### Merits

██ Plaintiffs begin their claim on the merits with the proposition that education is important—labeled "paramount" by state law—and that they have a constitutional right to choose an education of content and quality they deem appropriate. And indeed they do, at least within limits. If the plaintiff students find the content or quality of the education offered in the public schools unacceptable, they may attend private schools of their choice, charter their own schools, or opt for home schooling, so long as appropriate standards are met.

What plaintiffs may not do, however, is unilaterally control the content or quality of the education provided by the state. That role is allocated instead to the duly elected public officials who make the relevant policy decisions. In Florida, the decision that has been made is that public education will be provided in public schools, with exceptions not relevant here. The state has opted not to fund education in private schools, again subject to exceptions not relevant here. There is nothing unconstitutional about that approach.

The Constitution establishes the structure of our federal system, sets limits on the federal government's authority, and protects individual rights. Whether the Constitution goes further and imposes on state or federal governments an affirmative constitutional duty to provide benefits of one sort or another—food, health care, transportation, job training, or education come to mind—could perhaps be debated, although authority for such a proposition is surely scant. *See* LAWRENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 1674 & n. 3 (2d ed.1988). But even if there were such a duty and it extended to education, that would not help plaintiffs here. The State of Florida has affirmatively chosen to provide a free public education to all comers. The education is by no means perfect; indeed, some would say (and plaintiffs have said) it is not very good. But the free public education available in Florida is certainly sufficient to meet whatever affirmative duty the Constitution might impose.

That does not mean, of course, that public education is beyond the reach of the Constitution. Public schools cannot require students to embrace ideas or symbols they find offensive, *see, e.g., West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), nor may students be required to attend public schools rather than private schools of their choice, *see, e.g., Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). But a state does not run afoul of these principles when it chooses to fund public education but not to pay for students to attend private schools. Plaintiffs cite no authority even remotely suggesting the contrary, and no such authority exists.

Plaintiffs' proposition is so far afield that finding authority squarely rejecting it is

difficult. Some guidance may be found in *Locke v. Davey*, 540 U.S. 712, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004), which addressed a state decision to fund scholarships for postsecondary education, including at private institutions, but to disqualify students seeking devotional theology degrees. Like the plaintiffs in the case at bar, the plaintiff in *Locke* asserted that his First Amendment right to an education of his choice, coupled with the state's decision to fund education more generally, required the state to fund his education. The Supreme Court disagreed, saying, "The State has merely chosen not to fund a distinct category of instruction." *Id.* The same is true of the State of Florida in the case at bar; it has chosen to fund public education, but "not to fund a distinct category of instruction," that is, instruction in private schools.

Tangential support for this result also comes from *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Plaintiffs there challenged the system by which public education was funded in Texas; there were substantial disparities in the funding available within different districts. The Court held education not a fundamental right within the meaning of the Court's equal protection jurisprudence and held further that the state system was adequate to assure a basic education to every student. The same is true in Florida: the system assures a basic education to every student sufficient to meet any constitutional floor, and the fact that plaintiffs find the education inferior to that available elsewhere does not render the system unconstitutional. Indeed, plaintiffs' challenge to the Florida system in the case at bar is far weaker than the claim that was rejected in *Rodriguez*; plaintiffs there asserted they were receiving an education greatly inferior to that available to other students *in public schools at public expense*, while in the case at bar plaintiffs' claim is only that the publicly available education is inferior to that available *in private schools at private expense*.

Unable to point to any authority requiring a state to fund private benefits, plaintiffs invoke cases limiting, on First Amendment grounds, the government's ability to restrict a recipient's use of funds the government has chosen to provide. Thus, for example, when the government chooses to fund legal aid for the poor, there are limits on the government's ability to restrict the causes that a legal aid attorney may advocate. *See Legal Services Corp. v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). And when the government chooses to fund a museum, there may be limits on the government's ability to override the curator's selection of the art to be exhibited. *See Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F.Supp.2d 184 (E.D.N.Y.1999).

But these cases help plaintiffs not at all, because here the recipients of the funding at issue—the public schools—have not sought to use the funds in the manner advocated by plaintiffs. The clients in *Velazquez* were not able to compel the legal aid office to take on cases it chose not to handle, nor were they allowed to hire private attorneys of their own choice at public expense. The patrons in *Brooklyn Inst. of Arts* were not able to compel the museum to display art the curator chose not to display, nor were the patrons able to compel the city to fund a private museum the patrons found preferable to the museum the city chose to fund. These cases thus provide no support for plaintiffs' theory that they may compel the State of Florida to pay their private school tuition.

In short, the state has chosen to provide the plaintiff students a free public education. They can take it or not. They cannot, however, compel the state to pay

for their attendance at private schools of their choice.

For these reasons,

IT IS ORDERED:

1. Defendants' motions to dismiss (documents 5, 6, 7, 8, and 9) are GRANTED IN PART. The clerk shall enter judgment stating, "Plaintiffs' claims against the defendant State of Florida are dismissed without prejudice based on Eleventh Amendment immunity. Plaintiffs' claims against defendants John Ellis 'Jeb' Bush, James Home, Johnnie Byrd, and James E. King, in their official capacities, are dismissed with prejudice. Plaintiffs' claims against defendants State Board of Education, Florida Department of Education, Florida House of Representatives, and Florida Senate are dismissed as redundant."

2. Plaintiffs' motion for summary judgment (document 10) is DENIED.

3. The clerk shall close the file.