UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 03-1658

———————

WALTER HARRY HORNER, MD, PhD,

Plaintiff - Appellant,

versus

THE DEPARTMENT OF MENTAL HEALTH, MENTAL
RETARDATION AND SUBSTANCE ABUSE SERVICES; JACK
W. BARBER, MD; MARY CLARE SMITH, MD; JAMES
REINHARD,

Defendants - Appellees.

———————

No. 04-1637

———————

WALTER HARRY HORNER, MD, PhD,

Plaintiff - Appellant,

versus

THE DEPARTMENT OF MENTAL HEALTH, MENTAL
RETARDATION AND SUBSTANCE ABUSE SERVICES; JACK
W. BARBER; MARY CLARE SMITH,

Defendants - Appellees.

———————

Appeals from the United States District Court for the Western
District of Virginia, at Harrisonburg.  James H. Michael, Jr.,
Senior District Judge.  (CA-02-99-5)  James C. Turk, Senior
District Judge.  (CA-03-37-5)

Argued:  October 26, 2005          Decided:  December 2, 2005

---

Before WILKINS, Chief Judge, and NIEMEYER and KING, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** William Richard Goode, Portland, Oregon, for Appellant. Sydney E. Rab, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Tate C. Love, BLACK, NOLAND & READ, P.L.C., Staunton, Virginia, for Appellant.  Jerry W. Kilgore, Attorney General of Virginia, Joseph R. Carico, Chief Deputy Attorney General, Judith Williams Jagdmann, Deputy Attorney General, Edward M. Macon, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In these consolidated appeals, Walter Harry Horner challenges the district court's dismissals of his employment-related actions against the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services (the "Department") and various Department officials. The court dismissed the first of these suits ("Horner I") for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. See Horner v. Dep't of Mental Health, Mental Retardation & Substance Abuse Servs., No. CA-02-99-5, slip op. at 5-9 (W.D. Va. May 1, 2003) (citing, inter alia, D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923)). The court subsequently dismissed the second suit ("Horner II") on the ground of collateral estoppel. See Horner v. Dep't of Mental Health, Mental Retardation & Substance Abuse Servs., No. CA-03-37-5, slip op. at 6-7 (W.D. Va. Apr. 26, 2004).

Each of the district court's dismissal orders turned on prior decisions of a state grievance hearing officer. After the court's dismissal orders were rendered, however, the Supreme Court of Virginia determined that Horner's grievances had not been properly before the hearing officer. See Horner v. Dep't of Mental Health, Mental Retardation & Substance Abuse Servs., 597 S.E.2d 202 (Va.

3

2004).  We therefore vacate the dismissal orders of the district court and remand for further proceedings.[1]

# I.

On May 15, 2001, Horner was discharged from his position with the Department as a physician at Western State Hospital in Staunton, Virginia.  Horner's termination was based on his receipt of three "Group II" disciplinary notices; discharge is warranted on the accumulation of two such notices.  Horner utilized Virginia's statutory grievance procedure to contest the alleged workplace violations underlying the notices.  See Va. Code Ann. §§ 2.2-3000 to -3008.  At some point during the grievance process, he also raised the contention that he had been fired in retaliation for being an outspoken critic — both internally and publicly — of hospital policies and practices.

The grievance procedure in place at that time provided for up to three levels of management review, followed by a formal hearing. Horner's immediate supervisor, as the first-level respondent, supported reversal of the disciplinary notices and resolved that Horner should be reinstated with back pay and restoration of fringe benefits.  Horner's response was to conclude his grievance.

---

[1]In ruling today, we express no opinion on the propriety of the district court's dismissal orders under the circumstances that existed when they were entered, or on the present viability of the Horner I and Horner II claims.

However, the Department proceeded to the second- and third-level respondents, who each disagreed with the first-level respondent and pronounced that Horner should be denied relief.

Thereafter, the matter went before the grievance hearing officer. One of the notices was subsequently dismissed. In separate decisions issued on August 20, 2001, the hearing officer upheld the two remaining notices, which together were sufficient to warrant Horner's discharge. The hearing officer explicitly rejected Horner's allegation that his termination had been retaliatory, observing that Horner presented no evidence on which to base a finding of retaliation. See J.A. 26-27, 37-38.[2]

After losing on reconsideration by the hearing officer and exhausting his administrative appeals, Horner appealed to the Circuit Court of the City of Staunton. See Va. Code Ann. § 2.2-3006(B) (authorizing such appeal on grounds that hearing officer's decision was "contradictory to law"). By its opinion of July 11, 2002, the circuit court reversed the hearing officer's decisions on one of several grounds asserted by Horner: that under the statutory grievance procedure, the first-level respondent's determination in Horner's favor was final, and no further proceedings (including those before the hearing officer) were authorized. Without reaching Horner's other contentions, the court

---

[2]This citation to the "J.A." refers to the contents of the Joint Appendix filed by the parties in these consolidated appeals.

awarded the remedy that had been deemed appropriate by the first-level respondent — reinstatement with back pay and restoration of fringe benefits.  See Horner v. Dep't of Mental Health, Mental Retardation & Substance Abuse Servs., No. CL01000109-00 (Va. Cir. Ct. entered Sept. 5, 2002).

On September 30, 2002, the Department filed a notice of appeal in the Court of Appeals of Virginia.  In its opinion of April 22, 2003, the court of appeals reversed the ruling of the circuit court and remanded for consideration of Horner's other grounds for challenging the decisions of the hearing officer.  See Dep't of Mental Health, Mental Retardation & Substance Abuse Servs. v. Horner, 579 S.E.2d 372, 373 (Va. Ct. App. 2003).[3]

Meanwhile, during the pendency of the Department's appeal in the court of appeals, Horner initiated these federal court proceedings.  Specifically, on October 11, 2002, Horner filed his complaint in the Western District of Virginia in Horner I, alleging retaliation claims under 42 U.S.C. § 1983 for infringement of his free speech rights and under Virginia law for violation of the Commonwealth's public policy.  The Department and other Horner I Defendants subsequently filed a motion to dismiss.  In a report and recommendation of March 14, 2003, the magistrate judge advised the district court to grant the motion to dismiss on the ground that

_____

[3]On June 23, 2003, following the denial of rehearing en banc by the court of appeals, Horner noticed an appeal to the Supreme Court of Virginia.

6

the court lacked subject matter jurisdiction under the Rooker-Feldman doctrine. On May 1, 2003, the court dismissed Horner I in accordance with the magistrate judge's recommendation — a ruling that hinged on the administrative decisions of the grievance hearing officer.

Two weeks later, on May 14, 2003, Horner filed his complaint in the Western District of Virginia in Horner II, again alleging a retaliation claim under § 1983 for infringement of his free speech rights, and for the first time alleging a retaliation claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The Department and other Horner II Defendants filed a motion to dismiss and, on November 4, 2003, the magistrate judge recommended dismissal (as he had in Horner I) under the Rooker-Feldman doctrine. On April 26, 2004, the district court granted the motion. Rather than relying on the Rooker-Feldman doctrine, however, the court concluded that it was obliged under the doctrine of collateral estoppel to give the decisions of the grievance hearing officer — including his findings of no retaliation — issue preclusive effect.

Horner filed timely notices of appeal in both Horner I and Horner II. Thereafter, by its opinion of June 10, 2004, the Supreme Court of Virginia reinstated and affirmed the decision of the Circuit Court of the City of Staunton that Horner's grievances had not been properly before the grievance hearing officer, because

7

the determination of the first-level respondent was a final one. See Horner v. Dep't of Mental Health, Mental Retardation & Substance Abuse Servs., 597 S.E.2d 202, 206 (Va. 2004). In reaching its decision, the supreme court observed that "the legislature provided the employee with the substantive right to be afforded a remedy by the first-level respondent." Id. at 205. Accordingly, the court held that "[o]nce the employee accepted the remedy, the statutory scheme existing at the time precluded management from contesting the first-level decision." Id. The Department sought reconsideration, but the court denied rehearing on October 1, 2004.

With the benefit of the intervening opinion of the Supreme Court of Virginia, we now address Horner's appeals of the district court's dismissal orders in Horner I and Horner II. We possess jurisdiction over these appeals under 28 U.S.C. § 1291.

II.

A.

As explained above, the district court dismissed Horner I for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. We review the application of this doctrine de novo. See Burrell v. Virginia, 395 F.3d 508, 511 (4th Cir. 2005).

In applying the Rooker-Feldman doctrine here, the district court relied on the established principle that federal courts lack

8

jurisdiction to hear "constitutional claims presented or adjudicated by the state courts," as well as "claims that are inextricably intertwined with a state court judgment." See Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997) (internal quotation marks omitted). The court concluded, first, that the grievance hearing officer's decisions (and particularly his findings of no retaliation) were the result of an adjudicatory process subject to application of the Rooker-Feldman doctrine, and, second, that the doctrine was appropriately applied herein because the Horner I retaliation claims were based on the same essential facts as the retaliation claims before the grievance hearing officer.[4]

Because the state administrative decisions at the heart of the district court's Rooker-Feldman ruling were the decisions of the grievance hearing officer, we must vacate the court's dismissal order in Horner I. Although the Virginia courts did not (for whatever reason) address the hearing officer's factual findings, the Supreme Court of Virginia ultimately concluded that the hearing

---

[4]Notably, following entry of the district court's dismissal orders and after these appeals were filed, the Supreme Court decided Exxon Mobil Corp. v. Saudi Basic Industries Corp., emphasizing that the Rooker-Feldman doctrine is to be narrowly applied, only in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 125 S. Ct. 1517, 1521-22 (2005). The parties have submitted supplemental briefs outlining their views on the effects of Exxon Mobil herein. That issue, however, is outside the purview of our ruling today.

9

officer had lacked authority to hear Horner's claims.  In other words, the hearing officer's decisions are a nullity and therefore cannot serve as the basis for the application of the <u>Rooker-Feldman</u> doctrine.

B.

The district court dismissed <u>Horner II</u> based on its conclusion that it was obliged under the doctrine of collateral estoppel to give the decisions of the grievance hearing officer issue preclusive effect.  We review the application of collateral estoppel de novo.  <u>See</u> <u>Tuttle v. Arlington County Sch. Bd.</u>, 195 F.3d 698, 703 (4th Cir. 1999).

The district court relied for its collateral estoppel ruling on the principle "that when a state agency acting in a judicial capacity resolves disputed issues of fact <u>properly before it</u> which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." <u>Univ. of Tenn. v. Elliott</u>, 478 U.S. 788, 799 (1986) (internal quotation marks and alteration omitted) (emphasis added).  Here, of course, the Supreme Court of Virginia has now clearly ruled that Horner's grievances were not properly before the grievance hearing officer. Accordingly, the hearing officer's findings are not entitled to be given issue preclusive effect, and we are also constrained to vacate the district court's <u>Horner II</u> dismissal order.

10

III.

Pursuant to the foregoing, we vacate the district court's dismissal orders in Horner I and Horner II, and remand for such other and further proceedings as may be appropriate.

VACATED AND REMANDED