08-1226-cv
Morrison v. City of New York

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued:  April 7, 2009                                    Decided: January 11, 2010
                                                  Errata Opinion filed: January 26, 2010)

Docket No. 08-1226-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SANDRA MORRISON,

                    *Plaintiff - Appellant*,

v.

CITY OF NEW YORK, ELMHURST HOSPITAL CENTER, ALAN AVILES, President and
CEO of the New York City Health and Hospitals Corporation, CHRIS CONSTANTINO,
Executive Director of Elmhurst Hospital Center, M.D. LAURENCE ERIC DOPKIN and M.D.
CLAUDIA IORDACHE,

                    *Defendant-Appellees,*

JOHN DOE #1 through #10, NEW YORK CITY ADMINISTRATION FOR CHILDREN'S
SERVICES, JOHN DOE COURT OFFICERS, Queens County Family Court #1-4, JOHN DOE
EMPLOYERS, Queens County Family Court #1-4 and JOHN DOE EMPLOYERS OF
ELMHURST HOSPITAL CENTER #1-4,

                    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:    JACOBS, *Chief Judge*, WALKER, and LEVAL, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Chin, *J.*) dismissing Plaintiff's suit.  The suit, brought under 42 U.S.C. § 1983, alleged constitutional torts and related state law claims.  Plaintiff's claims are premised on her fourteen-day detention at Elmhurst Hospital based on a finding by hospital staff that there was reasonable cause to believe she suffered from a mental illness rendering her dangerous to herself or others.  Plaintiff had been remanded to Elmhurst by order of the New York Family Court for determination whether she suffered from such a mental illness.  The district court construed the complaint as a challenge to the order of the Family Court and dismissed under the *Rooker-Feldman* doctrine.  The Court of Appeals (Leval, *J.*) concludes that *Rooker-Feldman* is inapplicable, as the suit challenges decisions made by Elmhurst Hospital personnel which were not compelled by the Family Court order.  Affirmed in part, vacated in part, and remanded.

> LEO GLICKMAN, Stoll, Glickman & Bellina, LLP, Brooklyn, New York, for *Appellant*.
>
> ALAN G. KRAMS, New York, New York (Kristin M. Helmers and Elizabeth A. Wells, *on the brief*), for Michael A. Cardozo, Corporation Counsel of the City of New York, for *Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff Sandra Morrison appeals from an order of the United States District Court for

the Southern District of New York (Chin, *J.*) dismissing her suit, brought under 42 U.S.C.

§ 1983, alleging torts under the United States Constitution and state law.  The complaint asserts

claims against the Elmhurst Hospital, and persons associated with it, based on Plaintiff's

detention at the hospital for a period of fourteen days following her remand for psychiatric

evaluation by a judge of the Family Court of the State of New York.[1] The district court dismissed the complaint on the basis of the *Rooker-Feldman* doctrine,[2] construing the complaint as a challenge to the lawfulness of the Family Court's remand order. Plaintiff contends her suit does not challenge the Family Court order, but rather challenges the independent determinations made by personnel of the hospital – in particular the determination that she was a danger to herself or others and should therefore be further detained. We agree that the complaint can be so interpreted and that, to the extent the complaint seeks relief based on discretionary decisions of the hospital that were not mandated by the Family Court order, it should not have been dismissed under *Rooker-Feldman*.

**BACKGROUND**

On November 9, 2005, Plaintiff, as a respondent in a child neglect proceeding in the Family Court in Jamaica, New York, was sitting outside the courtroom, waiting for her case to be called. Apparently because she was engaged in highly emotional prayer, court officers brought her before the judge. During the hearing that followed, Family Court Judge Rhea G. Friedman, who had herself gone to the door to observe Plaintiff's conduct, noted that Plaintiff had been "praying[,] chanting and seemed quite distressed." Judge Friedman then issued an "Order

---

[1] The complaint asserts claims also against security officers at the Family Court, but Plaintiff has dismissed those claims.

[2] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923).

3

Directing Emergency Evaluation." The order provided in pertinent part:

> Sandra Morrison, a person before the court, has or may have a mental illness which is likely to result in serious harm to . . . herself or others based upon the following evidence presented: respondent continued to have an outburst in the waiting area after being told by Court Officers to calm down
>
> NOW, therefore, it is
>
> ORDERED that Sandra Morrison is remanded to HHC/Elmhurst Hospital, a hospital specified in section 9.39(a) of the Mental Hygiene Law, for a determination . . . whether such person should be retained therein pursuant to such section; and it is further
>
> ORDERED that the proceeding is adjourned to 11/23/2005; and it is further
>
> ORDERED that Court Release Only.

The judge explained that the remand was for "evaluation," that the order had provided for "court release only," and that she chose November 23 as the date to resume proceedings because "Elmhurst need[s] a Wednesday for transportation."

Plaintiff was then transported to the Elmhurst Hospital. Upon her admission to the hospital, Defendant-Appellee Dr. Laurence Dopkin certified that he had "examined [her] prior to admission and [found] there is reasonable cause to believe that [she] has a mental illness for which immediate observation, care and treatment in a mental hospital is appropriate and which is likely to result in serious harm to . . . herself or others." The admission form bears a handwritten note stating that Plaintiff was "remanded for [psychological evaluation] secondary to

4

uncooperative and religiously preoccupied behavior." Dr. Dopkin also certified that Plaintiff was furnished a "Notice of Status and Rights" form. The form stated: "Within 48 hours of the time of your admission, you will be examined by another physician . . . . *If he or she confirms the first physician's findings, you may then be kept in the hospital for a period of up to 15 days . . . .* During this 15 day period you may be released, converted to involuntary status, or asked to remain as a voluntary or informal patient" (emphasis added). The next morning, Defendant-Appellee Dr. Claudia Iordache examined Plaintiff and confirmed Dr. Dopkin's findings.

Plaintiff was then held at Elmhurst for two weeks and was returned to the Family Court on November 23, 2005. At the hearing that followed, the Family Court judge noted, apparently confirming the seriousness of Plaintiff's condition, that "the situation in the waiting room" two weeks earlier had been "untenable and a security risk." The court added that the hospital has the privilege to advance a remanded subject's release at any time, and often does so, but did not seek to exercise that privilege in this case. The court urged Plaintiff to follow through with therapy.

Plaintiff subsequently brought this action alleging that her detention at Elmhurst violated her rights under the First, Fourth, and Fourteenth Amendments, as well as various New York State laws.[3] Defendants moved to dismiss on various grounds. The district court dismissed the action for lack of subject matter jurisdiction reasoning that, under the *Rooker-Feldman* doctrine, it lacked the power to review state-court judgments. *Morrison v. City of New York*, No. 06 Civ.

_____

[3]The state law claims allege, *inter alia*, false imprisonment, medical malpractice, negligence, malicious prosecution, assault, and battery.

7608 (DC), 2008 WL 458728, at *4 (S.D.N.Y. Feb. 20, 2008). The court construed the complaint as a challenge to the Family Court order and rejected Plaintiff's contention that the challenge was to discretionary actions of the hospital. "For Morrison to prevail," the court explained, "she must demonstrate that the [Family Court] order was unlawful." *Id.* at *5. The court further reasoned that, because the Family Court judge had directed that Plaintiff could be released only by court order, and the court had adjourned the proceeding for two weeks (until November 23), the Elmhurst Defendants had no choice but to detain her until November 23, the date when she was returned to court. Finally, the court added in a footnote that, "even assuming the *Rooker-Feldman* doctrine was not a bar . . . , the individual defendants would be entitled to qualified immunity." *Id.* at *6 n.4.

This appeal followed.

**DISCUSSION**

"Because *Rooker-Feldman* goes to subject-matter jurisdiction, we review de novo the district court's application of the doctrine." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). "[W]e review factual findings for clear error and legal conclusions *de novo*." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted).

Plaintiff contends, as she did in the district court, that her challenge is not to the Family Court order, but to the Elmhurst doctors' determination that she was dangerous and to the

resulting decision to continue her detention. She contends the doctors were not compelled by the Family Court order either to find her dangerous or to keep her in custody for two weeks. Accordingly, she argues, the district court erred in construing her complaint as an attack on the Family Court order (or an action mandated by that order) and consequently dismissing her suit under *Rooker-Feldman*. The Defendants contend her challenge to the duration of her detention can be only to the Family Court order because that order required her detention until the date on which she was in fact released. The Defendants argue accordingly that her challenge is one the inferior federal courts have no power to entertain.

**I. *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts. *See Feldman*, 460 U.S. at 482-83; *Rooker*, 263 U.S. at 414-16. In 2005, the Supreme Court clarified the scope of the doctrine, explaining that it was "confined" to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In *Hoblock v. Albany County Board of Elections*, we noted that *Exxon-Mobil* "pared back the *Rooker-Feldman* doctrine to its core." *Hoblock*, 422 F.3d at 85. We interpreted the Supreme Court's opinion to specify four requirements that must be met for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*Id.* (alterations in original) (footnote omitted) (quoting *Exxon Mobil*, 544 U.S. at 284).

Plaintiff does not dispute that she "lost" in the Family Court when the judge issued the order remanding her to Elmhurst Hospital, nor that the Family Court order was issued before she commenced her suit in the Southern District of New York. She asserts, however, that her suit does not "complain of injuries caused by the state court judgment" and does not "invite district court rejection of that judgment." *See Hoblock*, 422 F.3d at 85. Accordingly, she argues, it was not appropriately dismissed under *Rooker-Feldman*. At least on the present state of the record, we agree with her contention.

The Family Court's order was unclear. The differing positions of the parties as to the applicability of *Rooker-Feldman* depend on their interpreting that order differently.

Plaintiff construes the order as mandating that she be taken to the hospital for evaluation and that she be held by the hospital for two weeks until November 23 *in the event she was reasonably found to be dangerous to herself or to others.* She contends, however, that the order should not be construed to have mandated her detention for two weeks if, upon examination, no

8

reasonable basis was found for detaining her. While Plaintiff concedes that the hospital doctors certified a finding of mental illness likely to result in injury to herself or others, she alleges in her suit there was no reasonable basis for that finding. Because there was no reasonable basis for finding such mental illness and the court's adjournment of the case for two weeks was premised on the expectation of a valid finding of mental illness, Plaintiff contends that the hospital was under a duty to return her promptly to court for release before the end of the two-week adjournment.

Defendants, in contrast, argue that because the court specified, "Court Release Only," and adjourned the case to November 23, the hospital doctors were under court order to keep Plaintiff in custody for two weeks regardless of whether the hospital examination revealed any basis for her detention. Defendants accordingly argue that, because Plaintiff's suit challenges her two-week detention, and that detention was compelled by court order, her suit must be viewed as a challenge to a state court order, which, under *Rooker-Feldman*, lower federal courts may not entertain.

As between the two competing interpretations of the ambiguous Family Court order, we find the Plaintiff's interpretation far more reasonable than the Defendants'. Admittedly, if the court order had specified what Defendants contend it means – that the hospital was ordered to detain Plaintiff for two weeks regardless of whether any medical justification was found for doing so – Defendants would have a strong argument that Plaintiff's challenge to her two-week detention must be viewed as a challenge to the court order that directed it, and thus barred by

9

*Rooker-Feldman*. But the order did not specify that the hospital was to detain her for two weeks regardless of whether it found medical cause to do so. And in our view it is not reasonable either to give it that interpretation or to assume that the Elmhurst doctors would have so interpreted it, especially in view of (a) the fact that such an order would have violated New York law and (b) evidence that neither the judge nor the doctors so understood it.

The order indeed provided, "Court Release Only," and furthermore, adjourned the proceeding "to 11/23/2005." But it seems most likely that the court intended the adjourned date to apply in the event, considered likely by the court, that the hospital would find Plaintiff to be dangerously mentally ill, and did not intend that she be detained for two weeks if the hospital found no reasonable basis for detention. This interpretation is supported both by the governing law under which the order was entered and by the court's comments. The order specified that it was entered under Mental Hygiene Law § 9.39(a). That statute specifies that a hospital may receive and retain a patient alleged to have a mental illness for up to fifteen days "only if a staff physician of the hospital upon examination of such person finds that such person" has "a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others" and "such finding is confirmed after examination by another physician [within forty-eight hours]." N.Y. Mental Hyg. L. § 9.39(a). Moreover, under Mental Hygiene Law § 9.43(a), a judge may remand an individual only for evaluation, and does not have the authority to order continuing hospital detention in the face of a

10

hospital determination that the patient does not meet the criteria of § 9.39(a).[4] Accordingly, had the Family Court judge intended her order to mean what Defendants contend it meant, the judge's intention would have been clearly contrary to New York law.

The evidence considered by the district court further placed in doubt whether the order was intended or understood to mandate holding Plaintiff for two weeks regardless of whether any detention was medically justified. On November 23, when Plaintiff was returned to the Family Court, the judge, emphasizing the seriousness of Plaintiff's condition and the court's perception of her need for therapy, noted that the hospital has the privilege to advance release and often does so, but did not seek to do so in her case. This comment seems to suggest an expectation on the part of the judge that, had the hospital found no proper medical basis to hold Plaintiff, it would have promptly returned her to court recommending her release, notwithstanding the two week

---

[4]N.Y. Mental Hyg. L. § 9.43(a) states:

> Whenever any court of inferior or general jurisdiction is informed by verified statement that a person is apparently mentally ill and is conducting himself or herself in a manner which in a person who is not mentally ill would be deemed disorderly conduct or which is likely to result in serious harm to himself or herself, such court shall issue a warrant directing that such person be brought before it. If, when said person is brought before the court, it appears to the court, on the basis of evidence presented to it, that such person has or may have a mental illness which is likely to result in serious harm to himself or herself or others, the court shall issue a civil order directing his or her removal to any hospital specified in subdivision (a) of section 9.39 . . . for a determination by the director of such hospital or program whether such person should be retained therein pursuant to such section.

11

adjourned date. Had the court understood its own order as mandating two weeks' detention, regardless of the hospital's findings as to her condition, it would have made no sense for the court to infer that the hospital doctors found her condition to be serious from the fact that they held her for the time ordered by the court.

The hospital documents that were before the district court similarly attest to an understanding on the part of the hospital staff that Plaintiff would not be detained for two weeks unless the medical findings supported such detention. Dr. Dopkin, who first examined Plaintiff and noted his finding of dangerous mental illness, delivered to Plaintiff a notice of her rights, which stated, "Within 48 hours of the time of your admission, you will be examined by another physician . . . . *If he or she confirms the first physician's findings,* you may then be kept in the hospital for a period of up to 15 days" (emphasis added). This hospital document explicitly contradicted the proposition that Plaintiff would be detained for two weeks regardless of whether medical justification was found. In addition, it is reasonable to infer that the doctors at such a mental health facility would have been well aware that a court order requiring confinement regardless of medical justification would have been in violation of the governing law.

In short, conceding that the Family Court order was on its face unclear, we think it far more likely that the order was both intended by the issuing judge and understood by the Elmhurst Hospital medical staff *not* to unlawfully direct the hospital to hold Plaintiff for two weeks even in the absence of any medical justification for such detention. The more likely meaning of the order, both as intended by the judge and as understood by the hospital, was that Plaintiff would

12

be held for two weeks, in accordance with New York law, *only if* the examination of two doctors found medical justification for such detention, but that she would otherwise be promptly returned to court with a recommendation of release.[5] At least absent further evidence supporting the bizarre and illegal interpretation Defendants would have us give the order, we find no basis for construing the complaint as an attack on the Family Court's order, rather than an attack on independent discretionary acts and decisions of the hospital staff that were not compelled by court order. On the basis of the present record, we conclude the suit was not barred by the *Rooker-Feldman* doctrine.

**II. Qualified Immunity and Failure to State a Claim**

The individual Defendants contend that, even if *Rooker-Feldman* does not apply, the suit against them must be dismissed because the district court found they are entitled to qualified immunity. The Defendants also contend the suit should be dismissed under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief may be granted.

The district court indeed stated in a footnote that "even assuming the *Rooker-Feldman* doctrine was not a bar to Morrison's claims, the individual defendants would be entitled to qualified immunity." *Morrison*, 2008 WL 458728, at *6 n.4. The court, however, gave no explanation and did not base its judgment on qualified immunity. It is at least possible that the

---

[5]Nor is this interpretation inconsistent with the court's specification that Plaintiff be released only upon court order. There was a warrant outstanding for Plaintiff's arrest. The specification that Plaintiff be released only by the court and not by the hospital would have insured satisfaction of the warrant.

court's view of the applicability of qualified immunity was based on its interpretation of the Family Court's order, which we have rejected. As for Rule 12(b)(6), the court did not address the issue.

In the absence of any explanation of the court's observation about qualified immunity and any consideration by the district court of the legal sufficiency of the complaint, we will not address those issues but will leave them to be addressed in the first instance by the district court upon remand if the Defendants should move for relief on those bases. *See Ford v. Reynolds*, 316 F.3d 351, 355-56 (2d Cir. 2003) (vacating grant of summary judgment on sovereign immunity grounds and remanding for consideration of whether qualified immunity barred suit against college officials where qualified immunity was briefed but not addressed by district court); *cf. Francis v. Coughlin*, 849 F.2d 778, 780 (2d Cir. 1988) (remanding for consideration of qualified immunity where the district court denied defendants' motion to dismiss for failure to state a claim and denied qualified immunity without explanation).

**III. Claims Against the City of New York**

Plaintiff's claims against the City of New York are derived from her claims against the court officers who initially detained her and transported her to Elmhurst. The other claims do not implicate the City because Elmhurst Hospital and its doctors and employees are part of the Health and Hospitals Corporation, "a public benefit corporation independent of the City of New York." *DeJesus v. N.Y.C. Health & Hosps. Corp.*, 309 A.D.2d 729, 730 (N.Y. App. Div. 2d Dep't 2003). Since Plaintiff has abandoned her claims against the court officers, Plaintiff has no

claim against the City.  We therefore affirm the district court's dismissal of the claims against the City of New York.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment dismissing the claims against the City and the court officer defendants, and VACATE the judgment dismissing the claims against the Elmhurst defendants.  REMANDED for further proceedings.