NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-4678

———

DAVID J. SCHATTEN; DONNA P. SCHATTEN,
Appellants

v.

WEICHERT REALTORS, INC.; BURGDORFF
REALTORS, INC.; GLENN A. GRANT, Acting
Director of the New Jersey Administrative Office
of the Courts

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-09-cv-01156)
District Judge: Honorable Jose L. Linares

———

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2010

Before: McKEE, Chief Judge, SLOVITER and RENDELL, Circuit Judges

(Filed: October 27, 2010)

———

OPINION

SLOVITER, Circuit Judge.

## I.

David and Donna Schatten appeal the District Court's dismissal of their lawsuit for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. We review questions of subject-matter jurisdiction de novo. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* --- F.3d ----, [2010 WL 3035466, at *4] (3d Cir. [Aug. 5,] 2010). "In an appeal from a grant of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (internal citations and quotations omitted).

According to their federal complaint, the Schattens purchased a home from Richard and Lora Haws in 1994. In 1995, they filed a lawsuit in New Jersey Superior Court against, inter alia, the Haws, Burgdorff Realtors, Inc., the selling broker, and Weichert Realtors, the listing broker. In their federal complaint (hereafter referred to as "Complaint"), the Schattens asserted that "[T]he allegations contained in the Superior Court Complaint were that the Haws intentionally and fraudulently concealed material defects in the house which they sold to [the Schattens], including failing to disclose the existence of an underground oil tank; that the Haws negligently maintained the premises, including the deck, so as to cause injury to Donna Schatten; that Weichert had actual

2

knowledge of these circumstances; and that Burgdorff, in the exercise of its required standard of care, should have known of them." Complaint at ¶ 5. The Haws were subsequently dropped from the suit "as a result of their bankruptcy . . . ." *Id.*

In December 1998, after discovery was completed, the Superior Court granted summary judgment in favor of Weichert and Burgdorff on all counts except for the claimed failure to disclose the existence of the oil tank. A month later, the Schattens sought leave to file an interlocutory appeal of that decision but were denied. The case then stagnated for two years while the Schattens awaited a trial date.

In March 2001, the Schattens moved to restore the claims that had been dismissed, but that motion was denied. "Following the entry of [that order], while plaintiffs awaited the scheduling of a trial date, the Clerk's office, without notice to any party or counsel, mistakenly closed and archived the file, incorrectly believing the case had been concluded." *Id.* at ¶ 20. "When no trial was ever scheduled, and after multiple contacts with the Clerk's office to ascertain the status of the case and the location of the file, and following repeated requests to have the file retrieved from the archives and relisted, [the Schattens] moved for a Case Management Conference to address the remaining issues in the case and a schedule for proceeding." *Id.* at ¶ 21. That motion – which according to the Appellate Division was made in February 2006 – about five years after the plaintiffs' previous motion – was denied in March 2006.

Weichert and Burgdorff then moved to dismiss the complaint, asserting the

3

defense of laches and arguing in part that they were prejudiced by the passage of time because a key witness had passed away in 2004, files had been destroyed, and witnesses' memories had faded. The Superior Court granted that motion and dismissed the complaint, and the Schattens appealed all of the rulings in the case, arguing in relevant part that "the judge erred . . . because there is no prejudice to [the] defendants . . . and plaintiffs did not cause the matter to be removed from the calendar . . . ." App. at 53. Unconvinced, the Appellate Division affirmed.

The Schattens then filed a complaint in the United States District Court against Weichert, Burgdorff, and the Honorable Glenn A. Grant, the acting Director of the New Jersey Administrative Office of the Courts, asserting that "[a]s a result of [the decisions of the state courts, the Schattens] have been deprived of an appellate adjudication on the merits of their claims and, were the appeal to be successful, of the possibility of redress at the trial level, all without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution." Complaint at ¶ 26. As relief, the Schattens requested an order directing that Grant "require that the Superior Court of New Jersey, Appellate Division, consider on the substantive merits" the Schattens' various claims regarding their house purchase. *Id.* at ¶ 27(a). The defendants moved to dismiss, and the District Court granted those motions on the grounds that the *Rooker-Feldman* doctrine barred it from exerting subject-matter jurisdiction over the Schattens' claims.

4

The Schattens timely appealed.[1]

## II.

The *Rooker-Feldman* doctrine is based on the principle that the Supreme Court's "appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority . . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 291 (2005). The Supreme Court in *Exxon Mobile* made clear that the "doctrine, . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284.

In our recent decision in *Great Western*, we "[broke] down the holding of *Exxon Mobil*, [and] conclude[d] that there are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." --- F.3d at ____ [2010 WL 3035466, at *6] (internal quotations and alterations omitted). The Schattens argue that their injuries

---

[1] We have jurisdiction under 29 U.S.C. § 1291. *See Taliaferro*, 458 F.3d at 188.

5

were not caused by the state-court judgments and, accordingly, that they are not asking for review of those judgments. Instead, the Schattens contend that they have presented "an independent federal claim based on the denial of their constitutional right to due process, as a result of the trial court and Appellate Division's failure to adjudicate the state court claims on their merits." Appellants' Br. at 2-3. More specifically, they argue that the "due process claim underlying the Complaint filed in the District Court is not premised upon appealing an adjudication by the state court, but, rather, the lack of adjudication by the Appellate Division, which refused to consider the state court case on its merits" and instead dismissed the action based on the laches defense. Appellants' Br. at 13. We disagree with the Schattens that their federal claim is "independent" of the underlying state actions.

As the Schattens recognize, "the Constitutional claim [they have] asserted . . . in their federal Complaint was neither adjudicated nor even alleged in the state court action . . . because their [asserted] protected right to due process under the Fifth and Fourteenth Amendments was not violated until the trial court and, subsequently, the Appellate Division refused to adjudicate the merits of their case . . . ." Appellants' Br. at 14. Thus, the injury the Schattens complain of is caused by the underlying state-court decisions dismissing their complaint, and they have "repaired to federal court to undo" that decision. *Exxon*, 544 U.S. at 293. As we stated in *Great Western*, "[p]rohibited appellate review consists of a review of the proceedings already conducted by the lower tribunal to

6

determine whether it reached its result in accordance with law." --- F.3d at ____ [2010 WL 3035466, at *8] (internal quotations and alterations omitted). That is exactly what the Schattens asked the District Court to do.

To be sure, in *Great Western* we held that the district court had jurisdiction over a claim that a conspiracy existed among the defendants and the Pennsylvania judiciary to rule in favor of those defendants at state-court proceedings. *Id.* at ____. We so held because the plaintiff was "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, [the plaintiff] claim[ed] that people involved in the decision violated some independent right, that is, the right to an impartial forum." *Id.* (internal quotations omitted). We noted that the alleged conspiracy "to reach a predetermined outcome in a case" itself violated a constitutional right independent of any subsequent state-court decision. *Id.* As a result, the state-court judgments were not the source of the plaintiff's injuries and, indeed, the plaintiff was not asking that those judgments be overturned, but instead was seeking damages. *Id.* at --- F.3d at ____.

As is evident, the Schattens do not allege that they were injured by any pre-decision conspiracy or other malfeasance that denied them due process. Instead, their claim is that the state-court decisions themselves violated due process by cutting short their ability to litigate the merits of their complaints, and that those state-court decisions therefore must be effectively overturned. As the Schattens put it, their Complaint at its

7

core "alleges that the State Court improperly failed to remedy a prior injury to the Appellants caused by adverse parties." Appellants' Br. at 3. Thus, the Complaint essentially requests that the District Court sit in appellate review of the state-court decisions: that is prohibited by the *Rooker-Feldman* doctrine.[2]

The Schattens' argument that their due process claim is "independent" because it was not presented in the state proceeding is unavailing. "Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have the state-court judgment reversed." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). The facts of *Feldman* itself make this clear. There, the Supreme Court held that the district court lacked subject-matter jurisdiction notwithstanding the fact that the plaintiff's constitutional challenge to the state-court judgment was not considered by the state court. *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983).

---

[2] Any lingering doubt in this case is resolved conclusively by the relief that the Schattens seek, i.e., an order that the state courts consider the substantive merits of their claims regarding the purchase of the property. Such an order would, of course, require the state courts to vacate their own orders dismissing the Schattens' complaint with prejudice. As we noted in *Great Western*, "[i]n both *Rooker* and *Feldman*, the plaintiffs sought to have the state-court decisions undone or declared null and void by the federal courts," and the Supreme Court held that this constituted prohibited appellate review. --- F.3d at ____.

Similarly, the Schattens argue that because the "merits" of their state-court claims were never decided by the state courts, the *Rooker-Feldman* doctrine does not apply to their federal complaint. They rely heavily on our decision in *Gulla v. N. Strabane Tp.*, 146 F.3d 168 (3d Cir. 1998). In that case, a state court decided that plaintiffs, adjacent landowners, did not have standing under state law to challenge approval of the subdivision of the adjacent property. Those plaintiffs then brought suit in federal court asserting violation of their federal due process, equal protection and just compensation rights as a result of the subdivision plan that had been approved in the state courts. *Id*. at 173-74. We denied dismissal of the federal claim on *Rooker-Feldman* grounds, reasoning that the district court had jurisdiction because the state court "did not adjudicate the merits of the constitutional claims." *Id*. at 173.

The issue decided in *Gulla* is not present here because the plaintiffs in *Gulla* did not request that the state-court decisions as to their lack of standing be reversed. In contrast, the relief the Schattens seek from the federal court, a mandatory injunction compelling the state courts to consider their claims, would effectively overturn the state-court decisions dismissing their claim on the ground of laches. Such a claim for relief is impermissible under the *Rooker-Feldman* doctrine.[3]

---

[3] Presumably, the Schattens have not brought federal claims for relief based on the underlying facts of their state-court suit because there are none over which they can invoke federal question or diversity jurisdiction.

9

**III**.

For the reasons set forth above, we will affirm the judgment of the District Court.