[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14224

Non-Argument Calendar

_____

GREGORY BARTKO,

Plaintiff-Appellant,

*versus*

JOHN EARLES,
Director of Office of Bar Admissions,
all in their individual and official capacities,
JOHN C. SAMMONS,
Chairman of the Board to Determine Fitness
of Bar Applicants, all in their individual and
official capacities,
HEIDI M. FAENZA,
former Director of the Office of Bar
Admissions, all in their individual and

2                    Opinion of the Court                    23-14224

official capacities,
REBECCA MICK,
Assistant Director of the Office of Bar
Admissions, all in their individual and
official capacities,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-05031-VMC

_____

Before JORDAN, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Gregory Bartko, *pro se*, appeals the district court's order dismissing his 42 U.S.C. § 1983 claims against certain directors, former or otherwise, of the Georgia Office of Bar Admissions (OBA) and chairman of the Georgia Board to Determine Fitness of Bar Applicants (Board) as barred by the *Rooker-Feldman*[1] doctrine. He asserts *Rooker-Feldman* does not bar his challenge to the constitutionality

---

[1] The *Rooker-Feldman* doctrine is named after two Supreme Court cases: *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

of the OBA's policy statement prohibiting disbarred Georgia lawyers from seeking readmission to the Georgia Bar when they are released from incarceration but still completing their criminal sentence (Policy Statement), because it does not require review and rejection of an earlier Georgia state court judgment. He also contends he has Article III standing and, to be sure, moved for leave to amend to add defendants to remove any concern about whether his injury was traceable to the defendants and whether the requested relief would be redressable by the defendants. He asserts that, to the extent the court denied the motion to amend as futile because it found his claims were barred by *Rooker-Feldman*, it erred. After review,[2] we vacate and remand.

## I.  ROOKER-FELDMAN

The *Rooker-Feldman* doctrine precludes a district court from exercising subject matter jurisdiction over a claim where a "losing party in state court file[s] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291

---

[2] We review *de novo* a district court's determination that it lacks subject matter jurisdiction. *Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021). We ordinarily review a district court's ruling on a motion for leave to amend for abuse of discretion. *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003). However, when the district court denies leave to amend because of futility, "we review the denial *de novo* because [the district court] is concluding that as a matter of law an amended complaint would necessarily fail." *Id.* (quotation marks omitted).

(2005). "This doctrine occupies 'narrow ground.'" *Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021) (quoting *Exxon Mobil*, 544 U.S. at 284).

> [I]t is based explicitly on the statutory limitations of federal district courts' jurisdiction.  Only when a losing state court litigant calls on a district court to modify or "overturn an injurious state-court judgment" should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court."

*Id.* at 1210 (quoting *Exxon Mobil*, 544 U.S. at 292-93).  "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction." *Exxon Mobil*, 544 U.S. at 293 (quotation marks omitted, alterations adopted).  However, the doctrine "bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tried to call the appeal something else." *Behr*, 8 F.4th at 1211.  Because of the narrow ground the doctrine occupies, we have emphasized a "claim-by-claim approach is the right one," and we have cautioned district courts to "keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Id.* at 1212-13.

In *Behr*, we applied these principles to "a 30-count pro se complaint" presenting "a wide variety of constitutional, statutory, and tort claims against 18 named defendants."  *Id.* at 1208.  The

district court had dismissed all 30 claims in the dismissal under *Rooker-Feldman* because "the claims were related to the Behrs' earlier state court litigation." *Id.* In reversing the district court's judgment of dismissal, we explained the Supreme Court's decision in *Exxon Mobil* had "exposed the flaws in our significant expansion of *Rooker-Feldman*." *Id.* at 1210.

In the context of attorneys seeking admission to the Bar, the Supreme Court, in *Feldman*, drew a distinction between cases in which a particular, disgruntled bar applicant challenges the denial of his admission to the bar on the one hand, which federal district courts lack jurisdiction to decide, and a constitutional challenge to a state's general rules and procedures governing admission to the bar on the other, which federal district courts have jurisdiction to decide. *See Feldman*, 460 U.S. at 483-84; *see also Kirkpatrick v. Shaw*, 70 F.3d 100, 102 (11th Cir. 1995) (holding the district court correctly determined it had subject matter jurisdiction over the plaintiff's facial challenge to the constitutionality of Florida's general rules and procedures governing admission to the bar).

The district court erred by failing to conduct a claim-by-claim analysis when dismissing Bartko's complaint. *See Behr*, 8 F.4th at 1213. Instead, it focused on the relief Bartko requested and summarily concluded it was barred under *Rooker-Feldman*. However, a close examination of the declaratory and injunctive relief that he seeks shows it is prospective relief seeking to bar further enforcement of the OBA's policy statement barring readmission of disbarred attorneys released from incarceration but not

having yet completed the terms of their sentence. The relief does not require the earlier state-court judgment be modified or overturned. *See Behr*, 8 F.4th at 1210.

Admittedly, Bartko checks off some of the *Rooker-Feldman* boxes—he is a state court loser who has come to federal court after state court proceedings have ended. *See Matter of Bartko*, 864 S.E.2d 39, 40 (Ga. 2021); *Exxon Mobil*, 544 U.S. at 291. However, a close review of Bartko's complaint does not reveal he is "seeking review and rejection of" the Georgia Supreme Court's affirmance of the OBA's denial of his request for waiver of the Policy Statement. *See Exxon Mobil*, 544 U.S. at 291. Rather, his complaint seeks to challenge generally the constitutionality of the OBA's Policy Statement as disenfranchising Georgia lawyers convicted of crimes who are released from incarceration but have not yet completed the terms of their sentence. This type of broad challenge is precisely the type of broad challenge the Supreme Court and this Court have held is within the district court's jurisdiction. *See, e.g., Feldman*, 460 U.S. at 483-84; *Kirkpatrick*, 70 F.3d at 102. The district court may ultimately have reason to dismiss Bartko's claims—but not on *Rooker-Feldman* grounds. *See Behr*, 8 F.4th at 1208.

## II.  STANDING

If a party does not amend its pleading "as a matter of course" within the time prescribed under Federal Rule of Civil Procedure 15, a party may only amend its pleading "with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a)(2). When a party seeks leave, "[t]he court should freely give leave

when justice so requires." *Id.* A district court errs in denying leave to amend as futile when a plaintiff seeks leave to amend to cure a standing defect, and the plaintiff's amendment would establish standing. *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1235 (11th Cir. 2003).

To establish Article III standing to sue in federal court, a plaintiff must "satisfy each of the standing doctrine's three components . . . injury-in-fact, traceability, and redressability." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (*en banc*) (quotation marks omitted). To show injury-in-fact, the plaintiff must show the "invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotation marks omitted). To show traceability, the plaintiff must show "a causal connection between [his] injury and the challenged action of the defendant—*i.e.*, the injury must be fairly traceable to the defendant's conduct, as opposed to the action of an absent third party." *Id.* (quotation marks omitted, alterations adopted). To show redressability, the plaintiff must show "it is likely, not merely speculative, that a favorable judgment will redress [his] injury." *Id.* As to redressability, the question is "whether a decision in a plaintiff's favor would significantly increase the likelihood that [he] would obtain relief that direct redresses the injury that [he] claims to have suffered." *Id.* at 1301 (quotation marks omitted, alterations adopted). We have stated "it must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury, whether

directly or indirectly." *Id.* (quotation marks and emphasis omitted).

The district court erred to the extent it denied Bartko's motion for leave to amend to cure a standing defect as futile because his claims were barred under *Rooker-Feldman*. Provided Bartko is given leave to amend, there appears to be no lack of Article III standing at this time. First, Bartko has shown injury-in-fact as a result of the Board's current Policy Statement, which is prohibiting him and other similarly situated individuals from reapplying for admission to the Georgia Bar while not incarcerated but still completing the terms of their sentences. *See Lewis*, 944 F.3d at 1296. Second, although Bartko did not originally sue the Board, to the extent that the Board is directly responsible for considering applications for readmission and reinstatement to the State Bar of Georgia,[3] and thus enforcing the Policy Statement, his motion to amend would cure any potential standing issues as to traceability. *See id.* Third, the declaratory and injunctive relief Bartko seeks, regardless of whether he may be entitled to such relief on the merits, would redress his injuries as the court's judgment would enjoin the Board from enforcing the Policy Statement. *See id.* at 1296, 1301.

---

[3] The Board to Determine Fitness of Bar Applicants considers applications for readmission and reinstatement to the State Bar of Georgia, and the Supreme Court of Georgia makes the final determination regarding certification of fitness. Ga. Rules Governing Admission to the Practice of Law, Part A, § 10.

23-14224                Opinion of the Court                9

Accordingly, we vacate and remand for further proceedings.

**VACATED AND REMANDED.**